Halina Topa
205 Wright St. 2-207
Lakewood, CO 80228
halinatopa@yahoo.com

Plaintiff in *pro per*

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2024 MAR 25 PM 3: 08

JEFFREY P. COLWELL
CLERK

BY_____DEP. CLK

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

| | |
|---|---|
| HALINA TOPA,<br>　　*Plaintiff,*<br>　　vs.<br>RICHARD FRECHIN,<br>　　*Defendant(s).* | ) Case No.: No. 12-3-456789-1<br>)<br>) DOCUMENT NAME<br>)<br>) (COMPLAINT FOR DAMAGES for<br>) Violations<br>)<br>) Of Trafficking Victim Protection Act (TVPA)<br>)<br>) State & Federal Constitutional Violations |

**JURY TRIAL DEMANDED**    *Jury TRIAL REQUESTED* [signature]

NOW COMES Halina Topa, Plaintiff, and files this Complaint against Richard Frechin,
Defendant, and for cause would show this Honorable Court as follows:

### A. PARTIES

1.  Plaintiff Halina Topa is a law-abiding female citizen of sound mind and a resident
of Jefferson County, State of Colorado.

2.  Defendant Richard Frechin is a male adult citizen, and is a resident of Arapahoe
County, State of Colorado. At the time of the events and causes of action described in
this Complaint, Defendant was a resident of Jefferson County and Arapahoe County.

### B. JURISDICTION AND VENUE

3.  Jurisdiction exists in this Court pursuant to 28 U.S. Code § 1331 which states: "The
district courts shall have original jurisdiction of all civil actions arising under the
Constitution, laws, or treaties of the United States."

4.  This Court has supplemental jurisdiction under 28 U.S.C. § 13671. This statute
allows federal courts to hear and decide state-law claims arising from the same case or
controversy as the federal law claims.

5.  Venue is proper in this Court in accordance with 28 U.S. Code § 1391(b) which
states in relevant part: "A civil action may be brought in – (2) a judicial district in which

a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."

## C. **STATEMENT OF FACTS**

6.  In 1987, Plaintiff first encountered Defendant through a tenant, Darrell Jones, at her property in Golden, Colorado. Initially, Defendant introduced himself as a single, divorced man with a daughter, Heidi.

7.  Defendant misrepresented his marital status, claiming that he was divorced because his ex-wife, Kate Walker was abusive. This initial interaction was the genesis of a relationship marked by deceit and manipulation, setting the stage for the ensuing years of turmoil and distress for Plaintiff.

8.  The relationship between Plaintiff and Defendant evolved under false pretenses. Defendant's advances grew more persistent, despite Plaintiff's reluctance and her interest in another individual, Dave, with whom she had a more genuine connection. The untimely death of Dave in a car accident in Black Hawk, where he and Plaintiff were supposed to meet, left her vulnerable. Defendant capitalized on this vulnerability, intensifying his pursuit, and manipulating Plaintiff into a relationship built on a foundation of deceit and misrepresentation.

9.  The dynamics took a significant turn in 1989 when Darrell Jones moved out, and Defendant moved into Plaintiff's upstairs apartment. This shift in living arrangements marked the beginning of a more direct and profound influence by Defendant over Plaintiff's life.

10. Defendant became increasingly controlling, moody, and financially burdensome, failing to pay rent and contributing to the eventual foreclosure of Plaintiff's house. The proximity allowed Defendant to exert greater control and manipulation, significantly impacting the family dynamics and Plaintiff's well-being.

11. Plaintiff had also learnt that Defendant was married and had another child by the name Jonathan Frenchin. When Plaintiff called him out for the same, he stated, in defense, that he did not inform her of his actual marital status and having two children because she would decline her advances.

12. In 1990, Plaintiff moved to 3482 W. Berry to rent out both her units attempting to save her house from Foreclosure this point, the Defendant's abuse against the plaintiff had escalated. The Defendant beat her, strangled her, and threw her down a flight of stairs. He even went to the extent of locking her out of her house during the freezing cold, in the dead of winter. In December 1991 Defendant sexually assaulted the Plaintiff.

13. On the 24th of August 1992, three days before the Plaintiff gave birth, the Defendant was driving t, when she started experiencing morning sickness and vomiting. The Defendant was so angry that he abruptly pulled the car over along the side of the highway. He also abruptly slammed on the breaks causing the plaintiff to hit her head against the dashboard. He then took her keys and threw them into the forest. Both parties had to hitchhike to get home. The Plaintiff later returned to the car after obtaining her spare keys and getting a ride from a friend.

14. Further, on the 27th of August 1992, the day Plaintiff was delivering her baby, Defendant kept driving off drove off and stopping causing Plaintiff to chase after

Defendant to take her to the Hospital. In the car he kept screaming at The Plaintiff This was done in the presence of his son, Jonathan.

15. On the 29th of August 1992, Defendant adamantly refused to take Plaintiffs and her newborn home, compelling her to contact her friend, Ewa Sliweski. Defendant went bonkers and attacked them throwing chairs at them. He then left with his kids. Consequently, Plaintiffs and her friend contacted the police, but no charges were filed against Defendants.

16. Consequently, Defendant sued Plaintiffs for custody claiming that she was mentally ill and abusive hence posing a threat to their baby. He even went to the extent of forcefully taking the baby from Plaintiffs after lying to the police. In 1993, there was a custody battle in court and Plaintiffs managed to get custody after spending $13,000 in attorney's fees, which she had to borrow from a friend.

17. On 4th of January 2004, Plaintiff's child called the Police at the age of 11 after assaulting her. Her son had suddenly turned hostile and abusive, having been influenced by Defendant. Subsequently, custody of the child was awarded to Defendant who prohibited Plaintiff from seeing her son. Since then, Plaintiff has made significant effort to reignite the great relationship she had with her son.

18. The relationship between Plaintiff and Defendant, from its inception to the shift in living arrangements, set the stage for a pattern of continuous harm. Defendant's manipulative tactics and controlling behavior, which he has since admitted to doing, not only strained Plaintiff's relationship with her daughter but also caused significant emotional, financial and psychological distress, the effects of which have been enduring and profound.

### D. **CAUSES OF ACTION**
i.**First Cause of Action: Violation of Trafficking Victim Protection Act (TVPA)**
ii.**18 U.S.C. § 1591**

19. Plaintiff incorporates all foregoing paragraphs of this Complaint by reference as though set out in full herein.

20. Defendant's conduct, as delineated in the preceding factual background, unequivocally constitutes a flagrant transgression of the provisions set forth in 18 U.S. Code § 1591. This statute stands as a sentinel against the heinous crime of sex trafficking, particularly emphasizing the reprehensible methods of force, fraud, or coercion utilized to subjugate individuals into commercial sexual exploitation.

21. Throughout the chronicle of events recounted herein, Defendant systematically wielded tactics of coercion, manipulation, and exploitation to assert dominance over Plaintiff and their progeny. This insidious pattern of behavior, meticulously executed by Defendant, underscores a calculated strategy aimed at depriving Plaintiff of her inherent autonomy and agency.

22. By misrepresenting his marital status, fabricating tales of divorce and abuse, and concealing critical aspects of his personal life, Defendant ingeniously ensnared Plaintiff into a web of deceit, thereby establishing a pretext for his subsequent nefarious actions.

23. The utilization of force and coercion by Defendant, as emblematic of his violent outbursts and physical assaults on Plaintiff, constitutes a flagrant violation of her bodily integrity and fundamental human rights.

24. The infliction of physical harm, ranging from beatings to strangulation, callously hurling Plaintiff down a flight of stairs, throwing objects at her, and hitting her with objects (including a board) represent egregious acts of violence perpetrated in furtherance of Defendant's nefarious objectives. The actions caused debilitating psychological trauma and injury to the Plaintiff.

25. Such abhorrent conduct not only engendered profound physical suffering but also instilled within Plaintiff a debilitating sense of fear and helplessness, thereby amplifying the coercive grip maintained by Defendant over her person.

26. Furthermore, Defendant's calculated exploitation of Plaintiff's vulnerabilities, exacerbated by the untimely demise of a prospective suitor and subsequent emotional turmoil, epitomizes the quintessential modus operandi of a sex trafficker.

27. Exploiting moments of vulnerability and distress, Defendant insidiously ingratiated himself into Plaintiff's life, leveraging her emotional fragility to perpetuate his reign of control and manipulation.

28. By capitalizing on Plaintiff's vulnerability and emotional turmoil, Defendant callously exploited her for his own gratification, thus effectuating a pernicious form of sexual exploitation tantamount to sex trafficking under federal law.

29. The harm Plaintiff suffered as a result of Defendant's abhorrent actions transcends mere physical injury, encompassing many enduring emotional, psychological, and socio-economic ramifications that have left an indelible mark on her life.

30. Defendant's relentless campaign of violence and physical abuse inflicted upon Plaintiff has resulted in tangible physical injuries, ranging from bruises and lacerations to more severe injuries such as fractures sustained from being thrown down a flight of stairs.

31. These physical wounds, while they may heal with time, serve as constant reminders of the trauma endured at the hands of Defendant, impeding Plaintiff's ability to move forward and reclaim a sense of normalcy in her life.

32. The psychological toll exacted by Defendant's coercive tactics and manipulative behavior is immeasurable. Plaintiff has been subjected to a sustained campaign of emotional abuse, characterized by demeaning insults, threats, and manipulation, which have systematically eroded her sense of self-worth and autonomy.

33. Moreover, the constant fear and anxiety engendered by Defendant's unpredictable outbursts and acts of violence have left Plaintiff in a perpetual state of hyper-vigilance, unable to find solace or respite from the looming specter of danger.

34. Defendant's parasitic presence in Plaintiff's life has exacted a heavy toll on her financial well-being. His failure to contribute to rent payments and his financial irresponsibility ultimately led to the foreclosure of Plaintiff's house, leaving her homeless and destitute.

35. Defendant's manipulative tactics, including coercing Plaintiff into renting out both units of her property, further exacerbated her financial troubles, leaving her struggling to make ends meet and provide for herself and her child.

36. The pervasive nature of Defendant's abuse and manipulation has had a corrosive effect on Plaintiff's social relationships and support networks. The stigma associated with being a victim of domestic violence and sexual exploitation may have further contributed to Plaintiff's social isolation, leaving her feeling ashamed and ostracized from society.

37. Perhaps most devastating of all is the impact of Defendant's actions on Plaintiff's relationship with her child. Defendant's relentless campaign to wrest custody of their child through false accusations and legal machinations has not only deprived Plaintiff of meaningful time with her child but has also irreparably damaged the parent-child bond.

38. Moreover, Defendant's insidious influence over their child, as evidenced by the child's sudden hostility and aggression towards Plaintiff, underscores the enduring legacy of trauma inflicted by Defendant's actions, perpetuating a cycle of abuse and dysfunction within the familial unit.

39. Defendant used "Parental Alienation and Kidnapping" along with "Pathological Parenting" as an emotional torture method, and as a tool to isolate Plaintiff from her family and loved ones. He also used pathological parenting and alienation as a punishment and retaliation for the Plaintiff not continuing to be his slave.

40. Defendant simultaneously eroded the self-worth of their son while preventing Plaintiff from rom providing maternal comfort to her suffering child.

41. In summation, the harm suffered by Plaintiff because of Defendant's reprehensible actions is multifaceted and profound, encompassing physical, emotional, psychological, and socio-economic dimensions that have left her shattered and bereft.

42. The Plaintiff also experienced financial harm because she was not compensated for her labor and work.

43. In light of the foregoing, Defendant's conduct unequivocally meets the threshold delineated in 18 U.S. Code § 1591, constituting a reprehensible form of sex trafficking perpetrated through force, fraud, and coercion.

44. As such, Plaintiff implores this Honorable Court to adjudicate the matter with the utmost gravity and severity commensurate with the egregious nature of Defendant's transgressions.

### iii. Second Cause of Action: Abuse of Process

45. Plaintiff incorporates all foregoing paragraphs of this Complaint by reference as though set out in full herein.

46. Around September 2023, Defendant went to court and defended a restraining order against Plaintiff even though she did not and does not ever communicate with Defendant.

47. The court did not renew the restraining order to the Defendant's disappointment. The Defendant did not need a restraining order but was abusing the process of obtaining a restraining order to are on his hate and defamation campaign against the Plaintiff and justify alienating her from her son. The defendant was taking the fraudulently obtained restraining orders to her son and persuading him not to speak to his mother.

48. The foundation of an abuse of process claim lies in demonstrating that the defendant had an ulterior motive in initiating or maintaining legal proceedings against the plaintiff. In this case, Plaintiff contends that Defendant's actions were driven by a desire to exert control, manipulate, and inflict harm, rather than seeking legitimate legal remedies.

49. Plaintiff's encounter with Defendant in 1987 marked the beginning of a tumultuous relationship characterized by deceit and manipulation. Defendant misrepresented his marital status, falsely claiming to be a divorced father, which laid the groundwork for

the ensuing years of turmoil. Despite Plaintiff's reluctance and her genuine interest in another individual, Defendant persisted in pursuing her, exploiting her vulnerability following the tragic death of Dave.

50. As the relationship progressed, Defendant's behavior became increasingly controlling and manipulative, culminating in physical violence and financial exploitation. Plaintiff endured abuse, both physical and emotional, at the hands of Defendant, who used his proximity and influence to maintain power and control over her life. This pattern of behavior demonstrates an ulterior motive on Defendant's part, driven by a desire to dominate and harm Plaintiff.

51. To establish an ulterior purpose in an abuse of process claim, Plaintiff must demonstrate that Defendant's actions were motivated by something other than the pursuit of justice or legitimate legal objectives. While Colorado courts have not provided a precise definition of what constitutes an ulterior purpose, it encompasses motives such as harassment, intimidation, retaliation, or financial gain.

52. In this case, Defendant's conduct aligns with these characteristics. By initiating legal proceedings, including baseless lawsuits and false accusations, Defendant sought to exert control over Plaintiff, undermine her credibility, and inflict emotional distress. Moreover, Defendant's manipulation of the legal system to advance his own agenda, such as seeking custody of Plaintiff's child under false pretenses, further underscores his ulterior motive.

53. Plaintiff contends that Defendant's actions were driven by an ulterior purpose inconsistent with the proper use of legal proceedings. Defendant's motive, characterized by a desire to control, manipulate, and harm Plaintiff, establishes the foundation for an abuse of process claim.

54. In addition to establishing an ulterior purpose, Plaintiff must demonstrate that Defendant engaged in willful action in the improper use of legal proceedings. This entails showing that Defendant employed legal processes in a manner not proper in the regular course of proceedings, with the intention of causing harm or obtaining an unjust advantage.

55. Defendant's misuse of legal processes extended beyond mere litigation tactics; it encompassed a pattern of conduct aimed at subverting the proper functioning of the legal system. From baseless accusations of mental illness to coercive custody battles, Defendant willfully abused legal proceedings to intimidate, harass, and control Plaintiff.

56. Of concern is Defendant's use of pretenses to initiate legal actions, such as fabricating allegations of abuse and manipulation to gain leverage in custody disputes. Moreover, Defendant's disregard for the truth and his manipulation of evidence further illustrates his willful engagement in improper conduct.

57. In Colorado, the improper use of legal proceedings refers to actions that deviate from the regular course of litigation and are motivated by an ulterior purpose. This includes tactics such as filing frivolous lawsuits, making false statements to the court, or engaging in coercive behavior to obtain an unjust advantage.

58. In this case, Defendant's actions clearly meet these criteria. By filing baseless lawsuits, making false accusations, and engaging in coercive behavior, Defendant violated the proper norms of legal practice. Furthermore, Defendant's disregard for the

truth and his manipulation of the legal system demonstrates a willful intent to misuse legal proceedings for his own benefit.

59. Plaintiff contends that Defendant's willful engagement in the improper use of legal proceedings is evident from his pattern of conduct throughout the relationship. By employing tactics such as false accusations, coercion, and manipulation, Defendant sought to undermine the integrity of the legal system and inflict harm upon Plaintiff.

60. Finally, Plaintiff must establish that Defendant's abuse of process resulted in damage, either tangible or intangible, to Plaintiff. This damage may include financial loss, emotional distress, reputational harm, or any other adverse consequences arising from Defendant's improper conduct.

61. The consequences of Defendant's abuse of process have been profound and enduring for Plaintiff. Beyond the physical injuries inflicted during episodes of violence, Plaintiff has endured significant emotional and psychological distress as a result of Defendant's actions. Moreover, Defendant's manipulation of legal processes has imposed substantial financial burdens on Plaintiff, including legal fees.

62. Furthermore, Defendant's actions have had long-lasting effects on Plaintiff's familial relationships and personal well-being. The trauma inflicted by Defendant's abuse, coupled with the loss of custodial rights over her child, has irreparably altered Plaintiff's life trajectory and caused lasting harm.

63. Plaintiff asserts that Defendant's abuse of process has resulted in significant damage, both tangible and intangible, to Plaintiff. From physical injuries to emotional distress and financial burdens, Defendant's actions have had far-reaching consequences for Plaintiff's well-being and livelihood. As such, Plaintiff seeks appropriate legal remedies to address the injustices suffered from Defendant's misconduct.

64. Given the egregious nature of Defendant's abuse of process and the substantial harm inflicted upon Plaintiff, she seeks both compensatory and punitive damages as redress for the injustices suffered.

65. Compensatory damages are necessary to reimburse Plaintiff for the tangible losses she has incurred due to Defendant's misconduct, including medical expenses, lost income, and emotional distress.

66. Additionally, punitive damages are warranted to deter Defendant and others from engaging in similar misconduct in the future and to send a clear message that such behavior will not be tolerated in a civilized society.

### iv. <u>Third Cause of Action: Defamation</u>

67. Plaintiff incorporates all foregoing paragraphs of this Complaint by reference as though set out in full herein.

68. Defendant, with malicious intent, intentionally made and disseminated false and defamatory statements about her character, including baseless accusations of mental illness and abusive behavior.

69. He continues to do so to this day. On or around March 1, 2024, the Defendant told their son that he should change his phone number and block his mother's phone calls because she is violent and mentally ill and wants to hurt him.

70. These statements were not only untrue but were made with full knowledge of their falsity and with the deliberate purpose of harming Plaintiff's reputation and familial relationships.

71. The false allegations of mental illness and abuse, among others, have inflicted profound damage on Plaintiff's reputation and standing within her community. These defamatory statements, crafted and spread by the Defendant, have tarnished Plaintiff's good name and undermined her credibility, causing irreparable harm to her personal and professional life.

72. By knowingly disseminating false information about Plaintiff's mental health and conduct, Defendant has acted with a reckless disregard for the truth, demonstrating a callous indifference to the devastation wrought upon Plaintiff's life.

73. Moreover, Defendant's defamatory conduct was not an isolated incident but rather a calculated campaign designed to inflict maximum harm upon Plaintiff. The sustained nature of these false accusations, coupled with Defendant's malicious intent, underscores the severity of his actions and the egregiousness of his defamation.

74. As a direct result of Defendant's defamatory statements, Plaintiff has suffered extensive harm, both tangible and intangible. The damage inflicted upon Plaintiff's reputation is immeasurable, with her good name irreparably sullied by the baseless accusations propagated by Defendant.

75. The false allegations of mental illness and abuse have caused Plaintiff to endure significant emotional distress, robbing her of peace of mind and subjecting her to unwarranted scrutiny and ridicule.

76. Defendant's defamatory campaign has had far-reaching consequences, extending beyond mere reputational harm. The loss of custody of her child, precipitated by Defendant's malicious actions, represents a profound and enduring injury inflicted upon Plaintiff.

77. The severance of the mother-child bond, facilitated by Defendant's defamatory conduct, has left Plaintiff bereft and emotionally shattered, with ongoing efforts to heal the wounds inflicted upon her familial relationships.

78. In addition to the intangible harms suffered by Plaintiff, there are concrete and quantifiable damages resulting from Defendant's defamation. Plaintiff has incurred financial losses, including legal expenses incurred in defending against baseless allegations, and the costs associated with seeking to repair her damaged reputation. The cumulative impact of this damage, both economic and emotional, is immeasurable and warrants redress from this Honorable Court.

79. In light of the egregious nature of Defendant's defamation and the profound harm inflicted upon Plaintiff, she seeks comprehensive relief to address the multifaceted injuries sustained as a result of Defendant's wrongful conduct.

80. Plaintiff seeks compensatory damages to remedy the tangible and intangible harms suffered, including damage to her reputation, emotional distress, and financial losses incurred as a direct result of Defendant's defamatory statements. This damage should be calculated based on the extent of harm inflicted upon Plaintiff, taking into account both the immediate and long-term repercussions of Defendant's defamation.

81. Additionally, Plaintiff seeks punitive damages as a deterrent against future misconduct and as a punitive measure to hold Defendant accountable for his malicious actions. Punitive damages are warranted in this case to send a clear message that defamation will not be tolerated and that those who engage in such reprehensible conduct will be held liable for their actions.

82. Furthermore, Plaintiff seeks injunctive relief to prevent further dissemination of Defendant's defamatory statements and to safeguard against future harm to her reputation and well-being. This may include restraining orders or other legal measures designed to curtail Defendant's ability to continue spreading false information about Plaintiff.

### v. Fourth Cause of Action: Breach of Fiduciary Duty

83. Plaintiff incorporates all foregoing paragraphs of this Complaint by reference as though set out in full herein.

84. In the context of the plaintiff's case against the defendant for breach of fiduciary duty, it is imperative to delve into the elements that defined the relationship between the parties involved. Central is the establishment of a confidential relationship, which serves as the foundation upon which fiduciary duties are predicated.

85. The plaintiff contends that a confidential and special relationship existed between herself and the defendant, stemming from a series of interactions and circumstances that transpired over their association.

86. Firstly, the plaintiff asserts that she placed a substantial degree of trust and confidence in the defendant, guided by his representations and assurances regarding his personal circumstances, particularly his purported marital status. From the onset of their acquaintance in 1987, the defendant portrayed himself as a single, divorced man with a daughter named Heidi, thereby fostering an atmosphere of trust and reliance on his disclosures.

87. Moreover, it is essential to recognize that the plaintiff's trust and confidence in the defendant were not unfounded but rather reasonable and justified in light of the information provided by the defendant. Given the defendant's consistent portrayal of himself as a divorced individual escaping an abusive marriage, the plaintiff's decision to place faith in his narrative was a rational response, reflective of her genuine belief in the veracity of his claims.

88. Furthermore, the plaintiff contends that the defendant actively accepted, invited, or acquiesced in her trust and confidence, thereby affirming the existence of a confidential relationship. Throughout the progression of their association, the defendant exhibited behaviors and gestures that reinforced the plaintiff's reliance on him, whether through his consistent presence in her life, his purported support during times of vulnerability, or his willingness to share intimate details about his personal history and struggles.

89. Crucially, the plaintiff asserts that the defendant assumed responsibility to act for her benefit, thereby solidifying the fiduciary nature of their relationship. By presenting himself as a supportive confidant and potential romantic partner, the defendant implicitly undertook an obligation to prioritize the plaintiff's interests and well-being, thereby elevating the level of trust and reliance inherent in their interactions.

90. Overall, the totality of circumstances surrounding the plaintiff's association with the defendant underscores the existence of a confidential relationship characterized by trust, reliance, and mutual dependence. From the plaintiff's perspective, the defendant occupied a position of influence and authority, thereby warranting the imposition of fiduciary duties aimed at safeguarding her interests and ensuring equitable treatment within the confines of their relationship.

91. The plaintiff contends that the defendant's conduct throughout the course of their relationship amounted to a flagrant violation of the fiduciary duties owed to her, manifesting in a myriad of manipulative tactics, controlling behaviors, and deceitful actions.

92. Firstly, the plaintiff highlights the defendant's deliberate misrepresentation of his marital status as a pivotal instance of breach of fiduciary duty. By falsely portraying himself as a single, divorced individual seeking companionship, the defendant engaged in deceitful conduct aimed at misleading the plaintiff and manipulating her into a relationship under false pretenses.

93. Moreover, the plaintiff asserts that the defendant's persistent and coercive advances, despite her expressed reluctance and interest in another individual, constituted further breaches of fiduciary duty. Rather than respecting the plaintiff's autonomy and boundaries, the defendant resorted to manipulative tactics and emotional exploitation, thereby exerting undue influence over her decisions and choices.

94. Furthermore, the plaintiff emphasizes the detrimental impact of the defendant's controlling behavior and financial irresponsibility on their relationship, which culminated in significant harm and distress for her. From failing to contribute to rent payments and contributing to the foreclosure of her property to exerting coercive control over her living arrangements, the defendant's actions undermined the plaintiff's autonomy and financial stability, thereby exacerbating the power imbalance inherent in their relationship.

95. Crucially, the plaintiff alleges that the defendant's breaches of fiduciary duty extended beyond mere negligence, constituting deliberate and calculated misconduct aimed at subjugating her to his will and agenda. By inflicting physical and emotional abuse, interfering with her custody rights, and perpetuating a pattern of manipulation and coercion, the defendant betrayed the trust and confidence reposed in him, thereby violating the core principles of fiduciary relationships.

96. The plaintiff contends that the defendant's egregious breaches of fiduciary duty were not only pervasive but also profoundly damaging, resulting in enduring harm and suffering for her. From the initial misrepresentations regarding his marital status to the culmination of physical violence and coercion, the defendant's conduct epitomizes a wholesale disregard for the fiduciary obligations owed to the plaintiff, warranting legal accountability and redress.

97. The plaintiff contends that the defendant's breaches of fiduciary duty were a direct and proximate cause of the damages she suffered, encompassing a broad spectrum of physical, emotional, and financial injuries.

98. Firstly, the plaintiff emphasizes the profound psychological distress inflicted upon her as a result of the defendant's manipulative tactics, controlling behavior, and physical abuse. From the erosion of her self-esteem and sense of agency to the onset of anxiety, depression, and post-traumatic stress disorder, the plaintiff's mental well-being bore the brunt of the defendant's misconduct, thereby constituting a significant component of the damages incurred.

99. Moreover, the plaintiff highlights the tangible financial hardships precipitated by the defendant's actions, including the foreclosure of her property and the depletion of her resources due to the defendant's failure to fulfill financial obligations. By exploiting her vulnerability and exerting coercive control over her living arrangements, the

defendant inflicted lasting economic harm upon the plaintiff, thereby exacerbating her precarious financial situation and impeding her ability to achieve financial stability.

100.     Furthermore, the plaintiff emphasizes the detrimental impact of the defendant's interference with her custody rights and familial relationships, particularly regarding her child. By manipulating the circumstances surrounding her custody battle and influencing her child's perception and behavior, the defendant not only deprived the plaintiff of meaningful parental relationships but also inflicted lasting emotional trauma upon her and her child, thereby compounding the damages sustained.

101.     The plaintiff contends that the damages incurred as a result of the defendant's breaches of fiduciary duty are manifold and profound, encompassing physical, emotional, and financial injuries that have irreversibly impacted her well-being and livelihood. By establishing the causal link between the defendant's misconduct and the damages sustained, the plaintiff seeks to hold the defendant accountable for his actions and secure appropriate remedies to mitigate the harm inflicted.

102.     Plaintiff seeks redress for the profound harm inflicted upon her and her child, pursuing appropriate relief to rectify the injustices perpetrated by Defendant and hold him accountable for his actions.

## vi.<u>Fifth Cause of Action: Fraud</u>

103.     Plaintiff incorporates all foregoing paragraphs of this Complaint by reference as though set out in full herein.

104.     The genesis of the Plaintiff's relationship with the Defendant traces back to 1987 when they first crossed paths through a mutual acquaintance, Mr. Darrell Jones. At the time of their initial encounter, the Defendant purported himself as a divorced individual, presenting a narrative that appealed to the Plaintiff's trust and openness. However, as events unfolded, it became evident that the Defendant's portrayal of his personal circumstances was a facade built upon deceit and manipulation.

105.     Central to the Plaintiff's allegations is the Defendant's deliberate misrepresentation of his marital status. Contrary to his assertions of being a single, divorced man with a daughter named Heidi, the Defendant concealed the truth of his existing marriage to Ms. Kate Walker and their son, Jonathan Frenchin. Such misrepresentations were pivotal in shaping the trajectory of the Plaintiff's relationship with the Defendant, as they formed the basis upon which she made decisions regarding the nature and depth of their involvement.

106.     The Defendant's false representations extended beyond mere statements of marital status to encompass a spectrum of assertions aimed at manipulating the Plaintiff's perceptions and actions. These falsehoods permeated various facets of their interactions, from the Defendant's professed intentions to the portrayal of his character and familial obligations. By creating a web of deceit, the Defendant sought to ensnare the Plaintiff in a relationship built upon a foundation of falsehoods and half-truths.

107.     Critical to establishing fraud is the demonstration of the Defendant's intent to deceive and the Plaintiff's reasonable reliance on the false representations. In this case, the Plaintiff contends that the Defendant knowingly made false statements or, at the very least, was aware of the misleading nature of his assertions regarding his marital status and family situation. Moreover, the Plaintiff asserts that she justifiably relied on

these misrepresentations in forming and maintaining her relationship with the Defendant, unaware of the deception underlying his outward persona.

108.     The repercussions of the Defendant's fraudulent conduct were profound and far-reaching, inflicting both immediate and enduring harm upon the Plaintiff. Physically, the Plaintiff endured instances of violence and abuse at the hands of the Defendant, culminating in severe injuries and psychological trauma. Financially, the Plaintiff suffered the consequences of the Defendant's irresponsibility and neglect, leading to the foreclosure of her property and subsequent displacement. Emotionally, the Plaintiff grappled with feelings of betrayal, confusion, and anguish as the truth of the Defendant's deception gradually unraveled.

109.     In accordance with Colorado law, fraud is defined as the intentional misrepresentation of material facts, made with the knowledge of their falsity or reckless disregard for the truth, with the intent to induce reliance and resulting in damages to the deceived party. Here, the Plaintiff contends that the Defendant's actions meet the requisite elements of fraud, as his deliberate misrepresentations of his marital status and other material facts were intended to deceive the Plaintiff and led to tangible harm.

110.     Under Colorado law, fraud typically requires the following elements to be proven by the Plaintiff:

a. Misrepresentation:

111.     The first element of fraud necessitates that the Defendant made a false representation, either through words, conduct, or a combination thereof. This misrepresentation must involve a material fact, meaning a fact that a reasonable person would attach importance to in making a decision. In the present case, the Plaintiff alleges that the Defendant misrepresented his marital status and family situation, which were material facts influencing her decisions regarding their relationship.

112.     b. Knowledge of Falsity or Reckless Disregard:

113.     The second element requires that the Defendant knew the representation was false or acted with reckless disregard for the truth. Alternatively, if the Defendant did not know whether the representation was true or false, they must have been aware of this uncertainty and failed to disclose it. The Plaintiff contends that the Defendant knowingly concealed his marital status and family obligations, thereby satisfying this element of fraud.

114.     c. Intent to Deceive and Inducement of Reliance:

115.     Fraud also entails an intent to deceive on the part of the Defendant and the Plaintiff's reasonable reliance on the false representation. The Plaintiff asserts that the Defendant intended for her to rely on his misrepresentations regarding his marital status and character, and she justifiably did so in forming and maintaining their relationship.

116.     d. Damages:

117.     Finally, fraud requires proof of damages resulting from the Defendant's fraudulent conduct. These damages may be financial, physical, emotional, or a combination thereof. In the present case, the Plaintiff suffered various forms of harm, including physical injuries, financial loss, and emotional distress, all directly attributable to the Defendant's deceitful actions.

118.     Moreover, Colorado follows the "economic loss rule," which generally precludes recovery in tort for purely economic losses that are not accompanied by physical harm or property damage. However, exceptions to this rule exist, particularly

in cases involving intentional misconduct, such as fraud. Therefore, while the Plaintiff may seek economic damages resulting from the Defendant's fraudulent conduct, she must demonstrate a nexus between the fraudulent misrepresentations and the specific economic harm suffered.

119.    Additionally, Colorado recognizes the doctrine of "fraudulent concealment," which applies when a party conceals or suppresses material facts with the intent to deceive another party. Fraudulent concealment operates similarly to traditional fraud but focuses on the act of concealing information rather than affirmatively making false statements.

120.    For example, in *Denberg v. Loretto Heights College*, Denberg v. Loretto Heights College, 694 P.2d 375 (Colo. App. 1984) the Colorado Court of Appeals emphasized the importance of materiality in determining the existence of fraud. The court held that a fact is material if a reasonable person under the circumstances would attach importance to it in determining their course of action. This standard aligns with the Plaintiff's contention that the Defendant's misrepresentations regarding his marital status were material facts she relied on in entering a relationship with him.

121.    Similarly, the Colorado Supreme Court's decision in *Hart v. Zaitz*, 72 Colo. 315, 211 Pac 391 (1922) underscores the requirement of proving actual damages to prevail on a claim of fraud. The court held that even if a representation is fraudulent and induces action, an action for fraud will not lie unless damages result. This principle highlights the necessity for the Plaintiff to demonstrate the tangible harm suffered as a direct consequence of the Defendant's fraudulent conduct.

122.    The harm and damage suffered by the Plaintiff in this case are multifaceted and extend across various aspects of her life, including emotional, psychological, physical, financial, and relational.

123.    The Plaintiff endured significant emotional and psychological trauma due to the Defendant's fraudulent conduct and abusive behavior. The manipulation, deceit, and gaslighting perpetrated by Defendant undermined Plaintiff's sense of self-worth, agency, and security. The constant cycle of deception and control eroded the Plaintiff's trust and confidence in herself and others, leaving her with feelings of betrayal, confusion, and helplessness.

124.    Moreover, the Plaintiff suffered from anxiety, depression, and post-traumatic stress disorder (PTSD) as a direct result of the Defendant's abusive actions and the trauma inflicted upon her.

125.    The ongoing emotional and psychological distress experienced by the Plaintiff has profoundly impacted her well-being and quality of life, impairing her ability to function effectively and engage in meaningful relationships.

126.    The Plaintiff also endured physical harm from the Defendant, including violence such as beating, strangling, and throwing her down a flight of stairs. These acts of physical abuse resulted in injuries ranging from bruises and lacerations to more serious injuries requiring medical attention.

127.    The physical harm inflicted upon the Plaintiff not only caused pain and suffering but also left lasting scars, both visible and invisible, that serve as constant reminders of the trauma she endured.

128.    The Plaintiff suffered significant financial harm due to the Defendant's fraudulent conduct and financial exploitation. The Defendant's failure to contribute

financially, including his failure to pay rent and his role in the foreclosure of the Plaintiff's house, left her in a precarious financial situation. The loss of her home and financial stability compounded the Plaintiff's distress and vulnerability, forcing her to rely on others for support and assistance.

129.      The Plaintiff's relationships with her child and other individuals were also adversely affected by the Defendant's fraudulent conduct and manipulative behavior. The Defendant's false allegations and attempts to gain custody of their child strained the Plaintiff's relationship with her child and caused additional emotional pain and distress.

130.      Moreover, the Plaintiff's trust and confidence in others were undermined by the Defendant's deceitful actions, making it difficult for her to form meaningful connections and maintain healthy relationships.

131.      The Plaintiff suffered legal and social harm due to the Defendant's fraudulent conduct and false allegations. The Defendant's attempts to manipulate the legal system and undermine the Plaintiff's credibility in court had profound consequences for her legal rights and social standing.

132.      The stigma and scrutiny resulting from the Defendant's false accusations of mental illness and abuse further compounded the Plaintiff's distress and made it difficult for her to seek justice and support.

### vii. Sixth Cause of Action: Violation of 42 U.S.C. § 1983

133.      Plaintiff incorporates all foregoing paragraphs of this Complaint by reference as though set out in full herein.

134.      Plaintiff brings forth a claim against Defendant, alleging egregious violations of her fundamental rights enshrined in the First Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment.

135.      These violations stem from Defendant's deliberate and calculated efforts to suppress and impede Plaintiff's ability to freely express herself and seek redress for grievances, thereby inflicting grave harm upon her.

136.      The First Amendment stands as a cornerstone of American democracy, safeguarding the rights of individuals to engage in free speech, assemble peacefully, and petition the government for a redress of grievances. This cherished freedom encompasses not only the right to express oneself without censorship or restraint but also the right to seek recourse and address grievances through lawful means.

137.      Defendant's transgressions against Plaintiff's First Amendment rights manifest in multifaceted forms, each constituting a distinct affront to the principles of free expression and redress.

138.      Defendant systematically manipulated and coerced Plaintiff into silence, exploiting her vulnerability and exerting control over her autonomy. Through deceit and subterfuge, Defendant obscured his true marital status and familial obligations, deceiving Plaintiff into a relationship founded upon falsehoods and deceit.

139.      By concealing his true identity and marital status, Defendant deprived Plaintiff of the ability to make informed decisions about her associations, thereby impeding her capacity to freely express herself and engage in meaningful relationships.

140.     Moreover, Defendant's actions escalated beyond mere deception, culminating in a campaign of intimidation and violence aimed at silencing Plaintiff's voice and stifling her dissent.

141.     Defendant's physical assaults, including beatings, strangulation, and other forms of abuse, not only inflicted physical harm upon Plaintiff but also instilled a pervasive atmosphere of fear and coercion, compelling Plaintiff to retreat into silence out of fear for her safety and well-being.

142.     By resorting to such violent and oppressive tactics, Defendant not only violated Plaintiff's bodily integrity but also trampled upon her fundamental right to express herself without fear of reprisal or retaliation.

143.     Furthermore, Defendant's efforts to suppress Plaintiff's speech extended beyond the confines of their private interactions, permeating into the public sphere and obstructing Plaintiff's ability to seek redress for grievances through lawful channels.

144.     Defendant's malicious interference in Plaintiff's custody proceedings, including false accusations of mental illness and abusive behavior, aimed to discredit Plaintiff's credibility and undermine her ability to assert her parental rights.

145.     By manipulating the legal system, Defendant deprived Plaintiff of her right to a fair and impartial hearing, thereby obstructing her access to justice and impeding her efforts to address legitimate grievances through proper legal channels.

### viii. Seventh Cause of Action: Violation of 42 U.S.C. § 13971

146.     Plaintiff incorporates all foregoing paragraphs of this Complaint by reference as though set out in full herein.

147.     The Violence Against Women Act (VAWA) is a landmark piece of legislation aimed at combating domestic violence, sexual assault, stalking, and other forms of gender-based violence.

148.     Enacted in 1994, VAWA has been reauthorized several times, with significant amendments and expansions to its scope. One of the key provisions of VAWA is found in 42 U.S.C. § 13971, which addresses civil rights remedies for victims of gender-based violence.

149.     This section of VAWA provides victims of gender-based violence with the right to seek civil remedies in federal court for acts of violence or gender-based crimes committed against them. It allows victims to bring a civil action for damages, injunctive relief, and other appropriate remedies against their perpetrators.

150.     Plaintiff alleges that Defendant subjected her to repeated acts of physical violence, including beating, strangling, and throwing her down a flight of stairs.

151.     These actions caused significant physical harm and injury to Plaintiff, constituting acts of domestic violence under VAWA. Defendant's physical violence against Plaintiff violates her rights under VAWA to be free from gender-based violence and abuse.

152.     In addition to physical violence, Plaintiff experienced severe psychological and emotional abuse from the Defendant. Defendant manipulated, controlled, and intimidated Plaintiff, causing her profound emotional distress and trauma.

153.     This pattern of psychological and emotional abuse constitutes a violation of VAWA, which recognizes that domestic violence encompasses not only physical violence but also psychological harm inflicted upon victims.

154.     Plaintiff further alleges that Defendant interfered with her custody and visitation rights over her child. Defendant's actions, including falsely accusing Plaintiff of being mentally ill and abusive, forcibly taking the child from her, and prohibiting her from seeing the child, constitute interference with the Plaintiff's parental rights under VAWA.

155.     VAWA recognizes the importance of protecting victims of domestic violence from further harm, including interference with their parental rights by perpetrators of violence.

156.     Plaintiff seeks appropriate relief for Defendant's acts of domestic violence, including but not limited to compensatory damages for her physical injuries, pain and suffering, medical expenses, and any other economic losses incurred as a result of Defendant's violations of VAWA.

### ix. Eighth Cause of Action: Violation of Colo. Rev. Stat. § 18-6-800.3

157.     Plaintiff incorporates all foregoing paragraphs of this Complaint by reference as though set out in full herein.

158.     Colorado Revised Statutes § 18-6-800.3 serves as a critical legal framework for addressing the pervasive issue of domestic violence within the state. This statute defines domestic violence offenses as acts or threatened acts of violence committed against a person with whom the offender has or has had an intimate relationship.

159.     By establishing a clear definition of domestic violence, this statutory provision plays a central role in protecting individuals from harm and holding perpetrators accountable for their actions.

160.     Defendant's actions, as described in the above facts, undeniably fall within the scope of this statutory definition.

161.     Through his perpetration of physical violence, emotional abuse, and control tactics, Defendant has engaged in conduct that constitutes domestic violence offenses under Colorado law. These actions have not only caused immediate harm to Plaintiff but have also created a climate of fear, intimidation, and insecurity within their relationship.

162.     Physical violence, in particular, represents a flagrant violation of the principles enshrined in Colo. Rev. Stat. § 18-6-800.3.

163.     By subjecting Plaintiff to acts of physical aggression, including beating, strangling, and throwing her down a flight of stairs, Defendant has inflicted direct harm and placed Plaintiff's safety and well-being at risk.

164.     Such acts of violence not only cause physical injury but also undermine the victim's sense of security and autonomy, perpetuating a cycle of abuse and control.

165.     In addition to physical violence, Defendant's conduct also constitutes emotional abuse, which is recognized as a form of domestic violence under Colorado law. Emotional abuse encompasses a range of behaviors designed to exert control, manipulate, and degrade the victim, thereby undermining their mental and emotional well-being.

166.     Through manipulation, gaslighting, and other emotionally abusive tactics, Defendant has systematically eroded Plaintiff's self-esteem, confidence, and sense of self-worth, further entrenching the cycle of abuse within their relationship.

167.     Furthermore, Defendant's use of control tactics, such as exerting control over Plaintiff's finances, social interactions, and daily activities, further exacerbates the harmful effects of his conduct and constitutes a violation of Colorado Revised Statutes § 18-6-800.3.

168.     By exerting control and dominance over Plaintiff, Defendant sought to isolate her from sources of support, undermine her independence, and perpetuate a sense of dependency and subjugation.

169.     In light of these egregious violations, Plaintiff asserts a cause of action against Defendant for violation of Colo. Rev. Stat. § 18-6-800.3.

170.     By holding Defendant accountable for his actions and seeking legal remedies for the harm inflicted upon her, Plaintiff aims to uphold the principles of justice, accountability, and protection enshrined in the statute.

171.     By asserting this cause of action, Plaintiff seeks to obtain redress for the harm inflicted upon her and hold Defendant accountable for his egregious conduct.

## x. Ninth Cause of Action: Assault

172.     Plaintiff incorporates all foregoing paragraphs of this Complaint by reference as though set out in full herein.

173.     Defendant's intentional conduct of physical touching towards the Plaintiff constituted an assault as defined under Colorado law.

174.     Assault, as defined in Colorado law, encompasses intentional conduct that causes apprehension of harmful or offensive physical contact. In the case of assault, it is crucial to establish that the defendant acted purposefully to create a reasonable fear of imminent physical harm or offensive contact in the mind of the plaintiff. This intentionality forms the cornerstone of any assault claim and serves as the basis for holding the defendant accountable for their actions.

175.     Under Colorado law, assault can encompass various forms of physical touching, ranging from direct physical violence to gestures or actions that reasonably induce fear of physical harm. Therefore, even if the defendant did not directly cause physical injury to the plaintiff, the mere act of creating apprehension of harm through physical contact can constitute assault.

176.     In the present case, the defendant's actions, including beating, strangling, and throwing the plaintiff down a flight of stairs, clearly meet the threshold for assault under Colorado law. These acts demonstrate a deliberate intention to inflict physical harm or create apprehension of harm in the plaintiff's mind, thereby satisfying the elements of assault.

177.     Defendant's actions, including beating, strangling, and throwing Plaintiff down a flight of stairs, resulted in harmful physical contact causing physical pain and injury to the Plaintiff.

178.     The physical violence inflicted upon the plaintiff by the defendant constitutes harmful physical contact, resulting in significant physical pain and injury. It is essential to recognize the severity of the defendant's actions and the tangible harm they caused to the plaintiff's well-being.

179.     The beating, strangling, and throwing of the plaintiff down a flight of stairs represent egregious acts of violence that warrant condemnation and legal accountability. These actions not only caused immediate physical pain and injury to the

plaintiff but also likely resulted in long-term health consequences and psychological trauma.

180.       Furthermore, it is important to note that the harmful physical contact inflicted upon the plaintiff by the defendant goes beyond mere discomfort or minor injuries. The severity of the defendant's actions underscores the gravity of the harm suffered by the plaintiff and highlights the need for legal recourse to address the defendant's wrongdoing.

181.       In assessing the extent of the harm caused by the defendant's actions, it is imperative to consider not only the physical injuries sustained by the plaintiff but also the broader impact on her overall well-being. The trauma inflicted by such acts of violence can have lasting effects on the victim's physical health, mental health, and quality of life.

182.       Additionally, Defendant's conduct, such as locking Plaintiff out of her house and forcefully compelling her to move into her neighbor's house, caused apprehension of harmful or offensive physical contact, leading to emotional distress.

183.       In addition to the direct physical violence inflicted upon the plaintiff, the defendant's coercive actions, such as locking her out of her house and forcibly compelling her to seek refuge in her neighbor's house, contributed to the plaintiff's emotional distress and created apprehension of further harm.

184.       The act of locking the plaintiff out of her own home represents a deliberate attempt to assert control and dominance over her, instilling fear and uncertainty regarding her safety and well-being. By depriving the plaintiff of access to her residence, the defendant effectively heightened her vulnerability and exposed her to additional risks and dangers.

185.       Furthermore, the defendant's actions in forcibly compelling the plaintiff to seek shelter in her neighbor's house demonstrate a blatant disregard for her autonomy and dignity. The imposition of such coercive measures not only violated the plaintiff's rights but also exacerbated her emotional distress and sense of helplessness.

186.       It is essential to recognize the profound impact of such coercive behavior on the plaintiff's mental and emotional well-being. The fear and anxiety induced by the defendant's actions have likely left lasting scars on the plaintiff's psyche, contributing to ongoing emotional trauma and psychological distress.

187.       In assessing the defendant's liability for assault, it is crucial to consider not only the physical harm inflicted upon the plaintiff but also the broader context of coercive control and intimidation. The defendant's actions, aimed at instilling fear and apprehension in the plaintiff, constitute a form of psychological assault that must be addressed through legal means.

188.       The Defendant's deliberate actions, including leaving the Plaintiff on the highway while she was expectant and toying with her by driving off on the day, she was delivering her baby, further exacerbated the Plaintiff's emotional distress and constituted assault under Colorado law.

189.       The defendant's intentional conduct of kicking the plaintiff out of his car while she was expectant and subsequently abandoning her on the day, she was delivering her baby represents a clear instance of assault under Colorado law. These actions were calculated to cause apprehension of harm or offensive contact in the plaintiff's mind, thereby inflicting further emotional distress upon her.

190.     By forcibly ejecting the plaintiff from his vehicle, the defendant demonstrated a callous disregard for her well-being and safety, exposing her to potential harm and danger. The act of abandoning the plaintiff in such vulnerable circumstances, especially on the day she was due to deliver her baby, reflects a shocking lack of empathy and compassion on the part of the defendant.

191.     Furthermore, it is important to recognize the profound psychological impact of such traumatic events on the plaintiff's mental and emotional health. The defendant's actions not only caused immediate distress but also contributed to long-term emotional trauma and psychological suffering.

192.     In assessing the defendant's liability for assault, it is crucial to consider the cumulative effect of his deliberate actions on the plaintiff's overall well-being. The repeated instances of coercive control and intimidation, aimed at instilling fear and apprehension in the plaintiff, underscore the gravity of the harm inflicted upon her and the need for legal redress.

193.     The defendant's behavior, as described in the facts, demonstrates a pattern of intentional conduct aimed at causing apprehension of physical harm or offensive contact, regardless of whether the Defendant intended the specific harm that ensued.

194.     The defendant's behavior, as evidenced by the factual scenario, reveals a pattern of intentional conduct aimed at instilling fear and apprehension in the plaintiff's mind, irrespective of the specific harm that ensued. This pattern of behavior underscores the defendant's culpability for assault and highlights the need for legal accountability.

195.     Throughout their relationship, the defendant consistently engaged in coercive and manipulative tactics designed to exert control over the plaintiff and intimidate her into compliance. From the initial misrepresentations regarding his marital status to the escalating acts of physical violence and coercion, the defendant's actions were calculated to induce fear and apprehension in the plaintiff.

196.     It is important to recognize that assault encompasses not only direct physical violence but also psychological intimidation and coercion. The defendant's repeated efforts to instill fear and apprehension in the plaintiff's mind constitute a form of psychological assault that must be addressed through legal means.

197.     Furthermore, the defendant's admission of guilt regarding his manipulative tactics and controlling behavior provides further evidence of his culpability for assault.

198.     As a direct consequence of Defendant's assaultive conduct, Plaintiff has endured a litany of physical injuries and ailments, each exacting a toll on her health, well-being, and quality of life.

199.     From bruises and lacerations to potential internal injuries stemming from the force and severity of the attacks, Plaintiff's physical ailments represent a painful reminder of the trauma inflicted upon her by Defendant's actions.

200.     These injuries necessitated extensive medical treatment, imposing a significant financial and emotional burden on Plaintiff and her loved ones.

201.     Plaintiff has also grappled with profound emotional distress and psychological trauma in the aftermath of the assaults. The fear, anxiety, and psychological anguish wrought by Defendant's violent behavior have left an indelible

mark on Plaintiff's mental well-being, manifesting in symptoms such as depression, anxiety, and post-traumatic stress disorder (PTSD).

202.     These invisible wounds, though less readily apparent than their physical counterparts, are no less debilitating or debilitating, robbing Plaintiff of her peace of mind, her sense of security, and her ability to lead a normal and fulfilling life.

203.     In terms of damages, Plaintiff seeks just compensation for her myriad injuries and losses, including but not limited to medical expenses, pain and suffering, emotional distress, loss of enjoyment of life, and lost wages or earning capacity.

204.     These damages, both economic and non-economic in nature, are intended to restore Plaintiff to the position she occupied prior to the assaults, providing her with the resources and support necessary to heal, recover, and rebuild her life in the wake of the afore-described harrowing ordeal.

205.     Additionally, Plaintiff seeks punitive damages as a means of punishing Defendant for his egregious conduct and deterring future instances of assault and violence. Punitive damages, distinct from compensatory damages, serve a dual purpose: to hold the defendant accountable for their wrongful actions and to send a clear and unequivocal message that society will not tolerate or condone acts of violence or aggression.

206.     By imposing punitive damages, the court not only seeks to vindicate Plaintiff's rights and interests but also to safeguard the broader community from the scourge of assault and its devastating consequences.

### xi. Tenth Cause of Action: Battery

207.     Plaintiff incorporates all foregoing paragraphs of this Complaint by reference as though set out in full herein.

208.     Plaintiff asserts a cause of action for battery against the Defendant. The essence of this claim lies in Defendant's repeated acts of physical violence against Plaintiff, which constitute a clear violation of her bodily integrity and autonomy.

209.     Battery encompasses any intentional and harmful physical contact inflicted upon another person without their consent. In this case, Defendant's actions meet all the necessary elements of battery.

210.     Throughout their tumultuous relationship, Defendant subjected Plaintiff to a series of violent assaults, leaving her with lasting physical and emotional scars.

211.     Plaintiff experienced numerous instances of abuse at the hands of Defendant, ranging from beatings and strangulation to being thrown down stairs. These acts of aggression were not only deliberate but also carried out with the intent to cause harm, thereby fulfilling the criteria for battery.

212.     Defendant's conduct towards Plaintiff demonstrates a blatant disregard for her well-being and safety. His actions were not accidental or unintentional but rather calculated and premeditated. By engaging in such violent behavior, Defendant violated not only Plaintiff's physical boundaries but also her fundamental human rights.

213.     Plaintiff did not consent to Defendant's actions, nor did she provoke or instigate them in any way. Instead, she was the unsuspecting victim of Defendant's brutal and unprovoked attacks.

214.     It is imperative that Defendant be held accountable for his reprehensible conduct and be made to answer for the harm he has caused Plaintiff.

215.     Plaintiff has suffered significant damages as a direct result of Defendant's battery. These damages encompass both tangible and intangible losses, all of which have had a profound impact on Plaintiff's life and well-being.

216.     Physically, Plaintiff sustained severe injuries as a result of Defendant's violent assaults. She endured bruises, lacerations, fractures, and other bodily harm, necessitating extensive medical treatment and intervention. Plaintiff incurred substantial medical expenses due to her injuries, including hospital bills, doctor's fees, medication costs, and rehabilitation expenses.

217.     Emotionally, Plaintiff has endured immense suffering and trauma due to Defendant's battery. She has experienced anxiety, depression, fear, and post-traumatic stress disorder (PTSD) as a result of the abuse she endured. Plaintiff's emotional well-being has been severely compromised, affecting her ability to function in her daily life and maintain healthy relationships with others.

218.     Additionally, Plaintiff has suffered various other forms of harm as a result of Defendant's battery. She has experienced a loss of enjoyment of life, as her physical and emotional pain has prevented her from engaging in activities she once enjoyed.

219.     In light of the foregoing, Plaintiff seeks just and fair compensation for the damages she has incurred as a result of Defendant's battery. This includes but is not limited to compensatory damages for medical expenses, pain and suffering, lost income, the damage to her reputation and relationship with her son, and punitive damages to deter Defendant from engaging in similar conduct in the future.

xii. **Eleventh Cause of Action: Intentional Infliction of Emotional Distress**

220.     Plaintiff incorporates all foregoing paragraphs of this Complaint by reference as though set out in full herein.

221.     Plaintiff brings forth a cause of action for intentional infliction of emotional distress against the Defendant based on a pattern of egregious conduct that has caused severe and enduring harm.

222.     The Plaintiff alleges that the Defendant's actions, spanning over several years, were calculated, malicious, and designed to manipulate, control, and ultimately harm her emotionally and psychologically. This cause of action seeks to hold the Defendant accountable for his reprehensible behavior and to obtain just compensation for the profound emotional suffering endured by the Plaintiff.

223.     The relationship between the Plaintiff and the Defendant commenced in 1987 under false pretenses. Defendant misrepresented his marital status, concealing the fact that he was married with children. This initial deceit laid the groundwork for a relationship characterized by manipulation, control, and abuse.

224.     The Plaintiff's vulnerability was exploited by the Defendant, particularly following the untimely death of another individual, Dave, with whom she had a genuine connection. Defendant capitalized on this vulnerability, intensifying his pursuit and manipulating the Plaintiff into a relationship built on lies and misrepresentations.

225.     As the relationship progressed, the Defendant's control over the Plaintiff's life increased significantly. He moved into her property, exerting influence over her living arrangements, finances, and family dynamics. The Defendant's behavior became increasingly erratic, controlling, and abusive, culminating in acts of physical violence and emotional manipulation.

226.      Colorado courts have adopted the Restatement definition of "extreme and outrageous conduct," which is now incorporated into a pattern jury instruction for claims of intentional infliction of emotional distress. According to this standard, conduct is deemed extreme and outrageous if it is so atrocious and utterly intolerable that a reasonable member of the community would regard it as beyond all bounds of decency.

227.      The threshold for establishing outrageous conduct is high, requiring conduct that goes beyond mere insults, indignities, or petty annoyances. Instead, the conduct must be of such an extreme nature that it would arouse resentment in a reasonable person and be considered utterly intolerable in a civilized society.

228.      Furthermore, a court will consider the totality of circumstances in determining whether a cause of action for intentional infliction of emotional distress has been stated. This includes analyzing a series of incidents or a course of conduct directed towards the plaintiff, rather than a class of persons.

229.      Additionally, the defendant's position of authority or relationship with the plaintiff may be relevant in determining whether the conduct rises to the level of outrageousness. Conduct that is otherwise permissible may become extreme and outrageous if it is an abuse of the defendant's power or authority over the plaintiff.

230.      To establish a cause of action for intentional infliction of emotional distress, the plaintiff must demonstrate that the defendant's conduct was directed towards them and that it caused severe emotional distress. Severe emotional distress consists of highly unpleasant mental reactions, such as shock, horror, grief, shame, humiliation, anger, or worry, to a degree that exceeds what a person of ordinary sensibilities could reasonably endure.

231.      In this case, the Plaintiff has suffered severe emotional distress as a direct result of the Defendant's actions. The Plaintiff has endured physical abuse, emotional manipulation, financial exploitation, and interference with her familial relationships, all of which have had profound and lasting effects on her emotional well-being.

232.      The Defendant's deliberate misrepresentations regarding his marital status, coupled with his controlling and manipulative behavior, have eroded the Plaintiff's sense of trust, security, and self-worth. The Plaintiff has experienced a range of highly unpleasant mental reactions, including shock, horror, grief, humiliation, and worry, to a degree that far exceeds what a person of ordinary sensibilities could reasonably endure.

233.      Furthermore, the Defendant's knowledge of the Plaintiff's susceptibility to emotional distress, coupled with his reckless or intentional infliction of such distress, further exacerbates the severity of the emotional harm inflicted. The Plaintiff's vulnerability, particularly following the death of Dave and the birth of her child, was exploited by the Defendant for his own malicious purposes, resulting in profound emotional suffering for the Plaintiff.

234.      The Plaintiff alleges a series of incidents that collectively demonstrate the extreme and outrageous nature of the Defendant's conduct. These incidents include physical violence, emotional manipulation, financial exploitation, interference with custody rights, and malicious attempts to undermine the Plaintiff's mental health and parental rights.

235.     The Plaintiff alleges that the Defendant subjected her to repeated acts of physical violence, resulting in severe injuries and trauma. These incidents included instances where the Defendant beat her, strangled her, and even threw her down a flight of stairs. Each act of violence inflicted by the Defendant left the Plaintiff in a state of fear, pain, and psychological distress.

236.     The physical abuse perpetrated by the Defendant created a climate of terror and intimidation within the Plaintiff's own home. The Defendant's willingness to resort to violence to assert control over the Plaintiff speaks to the egregious nature of his conduct and its profound impact on her emotional well-being.

237.     Furthermore, the Plaintiff's attempts to seek refuge from the abuse, including moving to a different residence, were met with further aggression and threats from the Defendant. This demonstrates a pattern of escalating violence and intimidation aimed at maintaining the Defendant's dominance and control over the Plaintiff.

238.     In addition to physical violence, the Plaintiff contends that the Defendant engaged in a sustained campaign of emotional manipulation and psychological abuse. This manipulation included gaslighting, deceit, and the exploitation of the Plaintiff's vulnerabilities for his own gain.

239.     The Defendant's manipulation tactics were designed to undermine the Plaintiff's sense of self-worth and autonomy. By distorting reality and sowing seeds of doubt in the Plaintiff's mind, the Defendant sought to maintain control over her emotions and actions.

240.     Furthermore, the Defendant's false promises and declarations of love were used as tools of manipulation to keep the Plaintiff trapped in a toxic and abusive relationship. The emotional toll of the Defendant's deceit and manipulation cannot be overstated, as it eroded the Plaintiff's trust, confidence, and sense of security.

241.     The Plaintiff alleges that the Defendant engaged in financial exploitation, contributing to the foreclosure of her house and exacerbating her financial instability. Despite living in the Plaintiff's property, the Defendant failed to fulfill his financial obligations, including paying rent and contributing to household expenses.

242.     The Defendant's financial irresponsibility placed an undue burden on the Plaintiff, further exacerbating her stress and anxiety. Moreover, the Defendant's refusal to take responsibility for his actions and contribute to the financial well-being of the household demonstrates a callous disregard for the Plaintiff's welfare.

243.     The financial strain caused by the Defendant's actions had far-reaching consequences for the Plaintiff, including the loss of her home and increased financial insecurity. This financial exploitation compounded the emotional distress already inflicted upon the Plaintiff by the Defendant's other abusive behaviors.

244.     The Plaintiff asserts that the Defendant maliciously interfered with her custody rights, attempting to portray her as mentally ill and unfit to care for their child. This interference included false accusations, manipulation of legal proceedings, and reckless disregard for the Plaintiff's parental rights.

245.     The Defendant's efforts to undermine the Plaintiff's parental rights were calculated and malicious, designed to isolate her from her child and exert further control over her life. By exploiting the legal system and manipulating the perceptions of others, the Defendant sought to deprive the Plaintiff of her fundamental right to parent her child.

246.     The emotional toll of the Defendant's interference with her custody rights cannot be overstated. The Plaintiff endured the anguish of being separated from her child, coupled with the fear and uncertainty of facing baseless accusations and legal challenges orchestrated by the Defendant.

247.     Finally, the Plaintiff alleges that the Defendant engaged in a campaign to undermine her mental health, including gaslighting, manipulation, and false accusations of mental illness. This malicious behavior further exacerbated the Plaintiff's emotional distress and undermined her ability to seek help and support.

248.     The Defendant's attempts to undermine the Plaintiff's mental health were calculated and deliberate, designed to erode her sense of self-worth and autonomy. By casting doubt on her mental stability, the Defendant sought to discredit the Plaintiff and maintain control over her emotions and actions.

249.     Moreover, the Plaintiff's attempts to seek help and support were met with further manipulation and gaslighting from the Defendant, making it difficult for her to break free from the cycle of abuse. The emotional toll of the Defendant's actions on the Plaintiff's mental health cannot be overstated, as it left her feeling isolated, powerless, and emotionally drained.

250.     Under Colorado law, intentional infliction of emotional distress requires conduct that is extreme and outrageous, exceeding all bounds of decency and utterly intolerable in a civilized society. This standard encompasses a wide range of conduct, including physical violence, emotional manipulation, financial exploitation, interference with custody rights, and malicious attempts to undermine mental health.

251.     To establish a cause of action for intentional infliction of emotional distress, the Plaintiff must demonstrate that the Defendant's conduct was directed towards them and that it caused severe emotional distress. Severe emotional distress consists of highly unpleasant mental reactions, such as shock, horror, grief, shame, humiliation, and worry, to a degree that exceeds what a person of ordinary sensibilities could reasonably endure.

252.     In this case, the Plaintiff has suffered severe emotional distress as a direct result of the Defendant's actions. The Plaintiff has endured physical abuse, emotional manipulation, financial exploitation, interference with her custody rights, and malicious attempts to undermine her mental health, all of which have had profound and lasting effects on her emotional well-being.

253.     Moreover, the Defendant's knowledge of the Plaintiff's susceptibility to emotional distress, coupled with his reckless or intentional infliction of such distress, further exacerbates the severity of the emotional harm inflicted. The Plaintiff's vulnerability, particularly following the death of Dave and the birth of her child, was exploited by the Defendant for his own malicious purposes, resulting in profound emotional suffering for the Plaintiff.

254.     As a result of Defendant's intentional conduct, Plaintiff suffered severe and lasting emotional distress, the effects of which continue to haunt her to this day.

255.     Plaintiff contends that Defendant's abusive behavior, coupled with his deceit and manipulation, caused her to experience intense feelings of anxiety, depression, and trauma, which significantly impacted her quality of life and mental health.

256.        The cumulative effect of Defendant's actions, from his initial deception to his subsequent acts of violence and manipulation, left Plaintiff emotionally scarred and psychologically traumatized.

257.        Plaintiff contends that Defendant's intentional infliction of emotional distress was not only severe but also enduring, with the effects of his abusive conduct continuing to reverberate through every aspect of her life.

258.        Plaintiff seeks redress for the severe and lasting harm inflicted on her by Defendant's deliberate actions, including compensatory and punitive damages, and any other relief deemed just and proper by this Honorable Court.

### E.  **PRAYER FOR RELIEF**

REASONS WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests this Honorable Court to GRANT her the following reliefs:

a.  GRANT judgment in favor of Plaintiff and against Defendant on all causes of action;

b.  AWARD Plaintiff compensatory damages for violation of 18 U.S.C. § 1591, abuse of process defamation, breach of fiduciary duty, fraud, violation of 42 U.S.C. § 1983, violation of 42 U.S.C. § 13971, violation of Colo. Rev. Stat. § 18-6-800.3, assault, battery, and intentional infliction of emotional distress in the sum of $15,252,913.85;

c.  AWARD Plaintiff punitive damages to deter Defendant's conduct in future;

d.  AWARD Plaintiff compensatory damages for any harm, inconvenience, or stress suffered by the Plaintiff due to Defendant's actions and omissions.

e.  AWARD Plaintiff such equitable reliefs, including injunctive relief, as this Court deems fair and appropriate in the circumstances;

f.  AWARD Plaintiff any further relief that this Honorable Court deems just and proper in the circumstances;

g.  AWARD Plaintiff costs and attorney fees incurred by the Plaintiff in prosecuting this action; and

h.  AWARD Plaintiff pre- and post-judgment interests on (b), (c) and (d) above.

Dated this 26 day of March, 2024.

Respectfully Submitted,

Halina Topa,
Plaintiff in *pro per*

03-25-2024