1
2

Halina Topa
205 Wright St. 2-207
Lakewood, CO 80228
halinatopa@yahoo.com

3

Plaintiff in *pro per*

4
5

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

6
7
8
9
10
11
12
13
14
15
16
17

HALINA TOPA,

    *Plaintiff,*

    Vs.

RICHARD FRECHIN, HEIDI FRECHIN-WILSON,

KATHELEEN ELIZABETH WALKER

STATE OF COLORADO, JEFFERSON COUNTY;

CITY OF LITTLETON; CITY OF LAKEWOOD,

ARCHDIOCESE OF DENVER *et al.*

    *Defendant(s).*

Case No.: 1:24-cv-00821-SBP

2nd AMENDED COMPLAINT FOR DAMAGES

18 U.S.C. § 1589, 18 USC 1962

42 USC 1983, 1985, & 1986

Abuse of Process, Defamation, Breach of

Fiduciary, Fraud, Outrageous Conduct, Gross

Negligence, Fraud Upon the Court

Perjury, Witness Intimidation, and Kidnapping

18
19
20
21
22
23
24

**JURY TRIAL DEMANDED**

NOW COMES Halina Topa, Plaintiff, and files this Complaint against Defendants Richard Frechin,

Heidi-Frechin Wilson, Kate Walker, Light of the World Catholic Church, Archdiocese of Denver,

City of Lakewood, City of Littleton, Jefferson County, State of Colorado, and their agents; relevant

Judges, guardian ad-lidems and anonymous social workers, attorneys, police officers, clergy and

individual does, and for cause would show this Honorable Court as follows:

25
26
27
28

## A.  PARTIES

PLAINTIFF'S ORIGINAL COMPLAINT - 1

1. Plaintiff **Halina Topa** (herein after known as 'PLAINTIFF' or 'TOPA') is a law-abiding female citizen of sound mind, and a resident of Jefferson County in the State of Colorado who legally immigrated to the United State from Poland in 1974 due to political unrest in the country because of World War II.

2. After the plaintiff was resettled in the Unites States, she thought she would be in a free country. Instead she was human trafficked and deprived of her rights under color of law, to equal protection under the law under State and Federal Constitutions because of her status as a woman, her national origin, and her status as a pregnant person; by her child's father, his family, the state of Colorado and the cities, counties, agencies, and churches subject to its' jurisdiction and constitution.

3. Abuse of process (legal abuse), perjury, witness intimidation, kidnapping, racketeering and fraud upon the court is the modus operandi used to perpetuate the humiliation and slander of the plaintiff to tarnish the relationship between her and her now adult son as well as isolate her from the community at large. Each defendant played a role by directly perpetuating the abuse of process or neglecting to prevent the misconduct when noticed about the malevolent actions and having power to stop it, neglected to stop the abuse.

4. Each defendant breached a fiduciary duty owed to the plaintiff because of her status as a domestic violence victim and the duties owed to the plaintiff under the law.

5. Each participated in the fraudulent concealment of the actions making the plaintiff's access to justice and true discovery of the plot and scheme nearly impossible.

6. During the Minor's entire life, prior to the involvement of the individually named defendants and entities identified and described herein, Mother provided for the Minor

with adequate housing, clothing, food, medical insurance, education and extracurricular activities. The Mother was also the Minor's main emotional bond.

7. Prior to the removal of the Minor by the defendants, mother raised, nurtured, provided guidance, education and athletic opportunities, and cared for the Minor, and both Mother and Minor enjoyed the company, companionship, and society of each other, and all other benefits and obligations of their rights of familial association with each other.

8. Defendant **Richard Frechin** (hereinafter referred to as "Mr. Frechin") is a male adult citizen and resident of Arapahoe County in the State of Colorado. He resides at 3482 West Berry Drive, Littleton, Colorado 80123. At the time of the events and causes of action described in this Complaint, Defendant was a resident of Jefferson and Arapahoe County.

9. Mr. Frechin conspired with his daughter, ex-wife, local county agencies, and the state to human traffic, discriminate against and exploit Topa because she was a vulnerable immigrant from Poland. He exploited her for labor and childbirth and then manipulated the legal system to prevent Topa from benefiting from her labor or the love of her child.

10. He also breached his fiduciary duty to the plaintiff and committed fraud to make her his trafficking victim.

11. Defendant **Heidi Frechin-Wilson** (hereinafter referred to as "Frechin-Wilson") is the adult daughter of Richard Frechin and is an adult citizen of Colorado. To plaintiff's knowledge, Frechin-Wilson is a resident of 4326 West Grand Avenue Littleton, Colorado 80123.

12. Defendant Heidi Frechin-Wilson legally abused, human trafficked and defamed plaintiff per quod by conspiring with her dad Richard and the Jefferson County court to continually renew a frivolous restraining order against the plaintiff

PLAINTIFF'S ORIGINAL COMPLAINT - 3

13. Defendants while in court intentionally misrepresented the facts and used deception for a judge to grant a restraining order against the plaintiff which she would then share with others in the community, including the plaintiff's son to imply and indirectly insinuate that the plaintiff is a danger to children and others.

14. Defendant Heidi Frenchin Wilson also breached her fiduciary duty to the plaintiff because she held herself out to be a close family member and person of the cloth whic0h caused the plaintiff to put her trust in defendants and hold her in confidence.

15. Due to Defendant's action, plaintiff suffered reputational damage and was not welcome to attend church.

16. Defendant **Kathleen Elizabeth Walker** (herein after referred to as "KATE") is the first wife of Richard Frechin. She resides at 2896 N. Riverwalk Circle #210 Littleton, Colorado 80123.

17. Kate conspired with Richard Frechin to harm Topa by physically harboring her then infant child and keeping him hidden from his mother and committing perjury in court to defraud the court into having Topa deemed as an unfit mother. This can be proven because Kate contradicted herself on several occasions on the record. Ms. Walker was a person of Public Trust as a Registered Nurse.

18. Kate Walker breached her fiduciary duty owed to the plaintiff as a health professional in a position of public trust, to not practice medicine on her without her consent. Yet still, Kate leveraged her credential and professional opinion as a nurse to gain an advantage over the plaintiff and conspire with her ex-husband to make maliciously false claims about the plaintiff's mental health status.

19. Defendant **LIGHT OF THE WORLD CATHOLIC CHURCH** (hereinafter known as 'CHURCH') is a 501(c)(3) religious organization located in Arapahoe County, Colorado at 10316 Bowels Avenue, Littleton, Colorado 80127 <u>that employed Heidi Frechin-Wilson as one of their agents and was responsible for her training and supervision. They conspired to make the plaintiff human trafficking victim by covering up the legal racket being committed against her and failing to supervise Frechin-Wilson in a religious capacity when contacted and noticed about the misconduct and evil deeds directly abhorrent to the manual of conduct and Bible teachings.</u>

20. Defendant **ARCHDIOCESE OF DENVER** (hereinafter referred to as "ARCHIDIOCESE"), is a 501(c)(3) church and religious organization located in Arapahoe, County at 1300 South Steele Street Denver, Colorado and is in a supervisory position over the Church and its' agents. They conspired to make the plaintiff human trafficking victim by covering up the legal racket being committed against her and failing to supervise Frechin-Wilson in a religious capacity when contacted and noticed about the misconduct.

21. Defendant **CITY OF LAKEWOOD** "hereinafter known as LAKEWOOD" is a municipality incorporate that is formally organized and exists under the laws of the State of Colorado.

22. It has an administrative subunit thereof, the POLICE DEPARTMENT (referred to herein after as "LAKEWOOD PD", which is an administrative agency of the city that is organized and exists pursuant to the laws and policies of the city. Their address is 445 South Alison, Lakewood, Colorado 80210

23. Defendant **CITY OF LITTLETON** "herein after referred to as LITTLETON" is a municipality incorporate that is formally organized and exists under the laws of the State of Colorado

PLAINTIFF'S ORIGINAL COMPLAINT - 5

the Colorado Constitution and the Constitution of the Unites States. It is located at 2255 West Berry Avenue Littleton Colorado 80120.

24. It has an administrative subunit thereof, the POLICE DEPARTMENT (referred to herein after as "LITTLETON PD", which is an administrative agency of the city and is organized and exists pursuant to the laws and policies of the City of Littleton.

25. Plaintiffs hereby sue all agencies and departmental units of CITIES specified hereinabove under the designation of CITY herein, and/or PD interchangeably.

26. Judge **K.J. Moore** of Jefferson County, 100 Jefferson County Parkway Golden, Colorado 80401, played a role in the trafficking conspiracy when s/he prevented the plaintiff from presenting her claim in court and committed fraud upon the court with the other conspirators. S/he also directly placed her child in harm's way by granting the abuser, Mr. Frechin sole custody because he is a man, but also ignoring that the child was self-mutilating a writing depressed letters about living with his dad. He falsely stated that the child was not in imminent danger with the dad despite being presented with evidence.

27. Judge Ruthann Polidirria of Jefferson County, 100 Jefferson County Parkway Golden, Colorado 80401 participated in the judicial racket by denying the plaintiff custody of her child because she dared to testify in court about her abuse. She discriminated against the plaintiff because she was a woman and said it was the Plaintiff's responsibility to cultivate love and affection from the father and if she could not this as a woman, then she should have her child taken away. Not only is this arbitrary and capricious, but this corrupt racketeering prevents the plaintiff from exercising her parental rights.

28. Judge Chris Voisinet, Jefferson County 100 Jefferson County Pkwy Golden, Colorado 80401 demonstrated <u>outrageous conduct and fraud upon the court which included blocking visitation between the plaintiff and her child for no legal at all for four years and then saying that, "It's not a big deal."</u>

29. Defendant 'Jeffrey Timlin", Guardian ad Litem 899 Logan Street, Suite 203 Colorado, Denver 80203 failed to investigate the claim, contact the plaintiff or exercise due diligence into fact finding or applying the law properly. He also disregarded the minor's communication and instead ignored the minor's requests and written calls for help.

30. Defendant COUNTY OF JEFERSON ("COUNTY") is a municipality incorporate that is formally organized and exists under the laws of the State of Colorado, <u>the Colorado Constitution and the Constitution of the Unites States.</u>

31. It has as an administrative subunit thereof, the DEPARTMENT OF CHILDREN AND FAMILY SERVICES (referred to as "DCFS" herein), which is an administrative agency of the COUNTY and is organized and exists pursuant to the laws and policies of the defendant COUNTY.

32. Plaintiff alleges that COUNTY and/or DCFS promulgated in written form, and/or encouraged, and/or permitted, policies, practices, customs, and/or procedures under which the individually named defendants, and Does 18 - 27, committed the acts or omissions complained of herein, and of which policies, practices, customs, and/or procedures, whether or not promulgated in written form, encouraged, or allowed to persist by defendant COUNTY, COUNTY condoned, ratified, and ignored without remediation the conduct of the social worker defendants pursuant to said policies, practices, customs, and procedures, as complained of herein.

33. As the employer of social workers and their supervisors, COUNTY and/or DCFS had primary responsibility for the training, education, and supervision of social workers, emergency response workers, continuing care workers, dependency intake workers, placement workers, and all other DCFS personnel, and DCFS supervisors, and either did not train as specified herein or did not adequately supervise its employees.

34. Plaintiff further alleges that COUNTY/DCFS failed to institute training, or adequately train/supervise employees situated such as the individually named defendants herein, regarding, among other things:

   a. the existence, method of obtaining, and circumstances requiring use of protective custody warrants authorized under Colorado state law;

   b. the meaning, intent, and contours of the 4th and 14th Amendments to the U.S. Constitution as relevant in the context of the investigation of a child abuse referral and potential removal/detention of a child and/or children from his/her/their parents or guardians;

   c. the meaning and definition of "exigency" and the application of factual circumstances to the determination of whether or not exigency exists to a sufficient degree as would obviate the need for a protective custody warrant when removing a child or children from his/her/their parents or guardians;

   d. the recent/current court decisions, or an ongoing review of such court decisions, affecting the liabilities and immunities of government actors when interfering in a family in a manner which impinges on their rights of familial association;

e.  the law, circumstance, justification, and investigatory obligations for maintaining children in the custody of DCFS pending a detention hearing; and, but not limited to, the emotional trauma and resulting symptoms for children removed from their parents and/or primary caregivers and the likelihood of life- long emotional harm;

35. Further, in regards to the creation and/or maintenance of a policy, practice, custom, usage and/or procedure, COUNTY/DCFS maintained, implemented, or maintains the following written and/or unwritten policies, practices, customs, and procedures, and/or repeatedly ratifies, condones, and authorizes adherence by social workers of COUNTY/DCFS to the following policies, practices, customs, usage and/or procedures:

a.  the removal of children from their parents and/or guardians in the absence of an imminent risk of serious bodily injury without a warrant and in the absence of an imminent risk of se1ious bodily injury;

b.  the continued detention of children prior to a detention hearing regardless of the lack of any risk of serious bodily injury;

c.  the lack of any requirement or obligation, or sanction for a failure, to conduct further investigation into whether there is any justification under state law for continuing the detention of children removed from their parent(s) or primary caregiver(s) pending a detention hearing;

d.  the warrantless removal of children who are not at imminent risk of serious bodily injury.

36. Plaintiffs are informed and believe and thereon allege that the aforementioned lack of training, and/or inadequate training, as well as the maintenance of the aforesaid policies,

practices, customs, and procedures, constitute a basis for governmental liability in this case pursuant to the *Monell* theory of liability, and hereby seek to hold COUNTY/DCFS individually liable and/or responsible in whole or in part for the conduct of the individual defendants and the damages naturally resulting therefrom.

37. Plaintiffs hereby sue all agencies and departmental units of COUNTY specified hereinabove under the designation of COUNTY herein, and/or DCFS interchangeably.

38. Defendant STATE OF COLORADO, (herein after referred to as 'COLORADO' or 'STATE'), like all states in the United States, is a legal entity that operates within the framework of the U.S. federal system. Legally, Colorado is classified as a state within the United States of America.

39. As a state, Colorado has its own government with powers delegated to it by the U.S. Constitution and its own constitution, statutes, and regulations that govern various aspects of life within its borders. Colorado has a state constitution, legislative branch (General Assembly), executive branch (Governor), and judicial branch (courts), mirroring the structure of the federal government.

40. Colorado operates as a sovereign entity within the federal system, meaning that it has its own laws and regulations that apply within its borders, subject to the supremacy of federal law as established by the U.S. Constitution.

41. Within its sphere of authority, Colorado has the power to enact and enforce laws, levy taxes, regulate commerce, provide for public safety and welfare, and administer justice.

42. It has several agencies including the Colorado State Bar, Colorado Bureau of Investigations, Colorado Commission on Judicial Discipline that receive state funding to ensure that residents' civil liberties are protected, and that justice is upheld.

43. The State of Colorado, through its agencies and departments, employs various mechanisms and initiatives to ensure the protection of citizens' rights across different areas. Here are some ways in which this is accomplished:

   a. Laws and Regulations: Colorado enacts laws and regulations designed to safeguard the rights of its citizens. These laws cover a wide range of areas, including civil rights, consumer protection, labor rights, environmental protection, healthcare, education, and more.

   b. Government Oversight: State agencies and departments oversee compliance with laws and regulations within their respective domains. They investigate complaints, enforce regulations, and take corrective action when violations are identified. For example, the Colorado Civil Rights Division investigates allegations of discrimination, while the Colorado Department of Labor and Employment enforces labor laws.

   c. Legal Assistance and Advocacy: Colorado provides legal assistance and advocacy services to help citizens understand their rights and navigate legal processes. Programs such as Legal Aid, the Office of the State Public Defender, and various nonprofit organizations offer legal representation and advice to individuals who may not be able to afford private attorneys.

d.  Public Awareness and Education: State agencies and departments conduct outreach and educational programs to inform citizens about their rights and responsibilities under the law. This may include disseminating informational materials, hosting workshops and seminars, and providing online resources to educate the public about their rights and available legal remedies.

e.  Civil Liberties Protections: Colorado is committed to protecting civil liberties and freedoms guaranteed by the state and federal constitutions. This includes safeguarding rights such as freedom of speech, freedom of religion, the right to privacy, and due process of law.

f.  Ombudsman and Grievance Mechanisms: Some state agencies have ombudsman offices or grievance mechanisms that allow citizens to report concerns, seek assistance, and file complaints regarding issues such as government misconduct, abuse of power, or violations of rights.

g.  Collaboration with Stakeholders: The state collaborates with stakeholders, including community organizations, advocacy groups, and legal experts, to address systemic issues, promote dialogue, and develop policies that advance the protection of citizens' rights.

h.  Overall, through these various approaches and initiatives, the State of Colorado strives to uphold and protect the rights of its citizens, promote fairness and equality, and ensure access to justice for all residents.

44. The defendant, Colorado, has been grossly negligent towards the plaintiff by failing to exercise reasonable care and diligence in preventing harm to her rights or addressing the violations that have continuously occurred by their:

   a. **Failure to Enforce Laws and Regulations**: The defendant failed to enforce existing laws and regulations designed to protect citizens' rights because two county law enforcement agencies failed to investigate and prosecute the sexual assault of the plaintiff by Richard. Therefore, they failed to uphold citizens' rights to equal treatment and protection under the law.

   b. **Inadequate Policies and Procedures**: Colorado has inadequate policies and procedures in place to prevent rights violations or address complaints effectively. State agencies lack clear protocols for handling reports of judicial misconduct and courtroom corruption therefore, the rights to due process are infringed.

   c. **Lack of Resources or Funding**: States have a duty to allocate sufficient resources and funding to support programs and services aimed at protecting citizens' rights. Colorado state has consistently underfunded key agencies and programs responsible for enforcing rights protections, resulting in systemic failures to address violations or provide adequate support to affected individuals.

   d. **Indifference or Inaction**: Colorado's negligence stems from indifference or inaction on the part of their state officials and agencies in response to the known rights violations and systemic injustices. If state actors are aware of ongoing abuses but fail to take appropriate action to prevent harm or provide redress, they may be deemed negligent in upholding citizens' rights.

e. **Failure to Address Systemic Issues**: Colorado was negligent because they failed to address systemic issues which perpetuated the rights violations of the plaintiff, and instead acted as a barrier to access to justice. The state also neglected to implement reforms or policies aimed at addressing these underlying issues which contributed to the ongoing rights abuses and harm to citizens.

45. The actions and failures to act of each individually named defendant who is not an entity herein, are alleged in the alternative to have been conducted or failed to have been performed either in their individual capacities, or as employees of their respective employing entity defendants on behalf of such entity defendants and under color of state law.

## B. JURISDICTION AND VENUE

46. Jurisdiction exists in this Court pursuant to 28 U.S. Code § 1331 which states: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

47. This Court has supplemental jurisdiction under 28 U.S.C. § 13671. This statute allows federal courts to hear and decide state-law claims arising from the same case or controversy as the federal law claims.

48. Venue is proper in this Court in accordance with 28 U.S. Code § 1391(b) which states in relevant part: "A civil action may be brought in – (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."

49. 18 USC 1589 provides for federal jurisdiction over cases involving forced labor, allowing for prosecution at the federal level regardless of whether the offense crosses state lines or international borders.

50. The amount of damages sought is in excess of $75,000.00

### C.  TORT CLAIM COMPLIANCE

51. Plaintiffs have exhausted administrative remedies, or otherwise complied with state law requirements for the filing of a Tort Claim Notice pursuant to 28 U.S. Code § 2675 and their claims for relief herein, have either been rejected, ignored, or deemed rejected as a matter of law.

### D.  STATEMENT OF FACTS

52. **Richard Frechin**

53. Mr. Frechin continuously went to court and made deliberate misrepresentations and omissions as part of his goal to take advantage of the plaintiff and to inflict emotional distress upon her. He manipulated his son and defamed the plaintiff to her son to turn the then minor against his mother because he looks down on women especially when they are from other countries like Poland.

54. After Mr. Frechin sexually assaulted the Plaintiff, he told the Plaintiff on several occasions that women were only good for breeding and domestic labor. He also confessed to using his ex-wife Kate for breeding children and said he never loved her.

55. He sexual assaulted the plaintiff, used her for manual labor and services and then sought to cover his tracks and inflict further pain on the plaintiff by alienating her from her son and community.

56. Mr. Frechin utilized fraud in the juvenile and civil court to seek restraining orders against the plaintiff even though she never threatened or harassed him. He breached his fiduciary duty to her by luring her into a close and personal relationship, gaining her trust, developing an intimate romantic relationship and subsequently behaving as if she was a complete stranger with mental health issues.

**57. Initial Fraud and Misrepresentation**

58. In 1987, Plaintiff first encountered Frechin through a tenant, Darrell Jones, at her property in Golden, Colorado. Initially, Defendant introduced himself as a single, divorced man with a daughter, Heidi.

59. Defendant misrepresented his marital status, claiming his ex-wife, Kate Walker, was abusive and had filed for divorce. This initial interaction was the genesis of a relationship marked by deceit and manipulation, setting the stage for the ensuing years of turmoil and distress for Plaintiff.

60. The relationship between Plaintiff and Defendant evolved under false pretenses. Defendant's advances grew more persistent, despite Plaintiff's reluctance and her interest in another individual, Dave, with whom she had a more genuine connection. The untimely death of Dave in a car accident in Black Hawk, where he and Plaintiff were supposed to meet, left her vulnerable. Defendant capitalized on this vulnerability, intensifying his pursuit, and manipulating Plaintiff into a relationship built on a foundation of deceit and misrepresentation.

16

61. The dynamics took a significant turn in 1989 when Darrell Jones moved out, and Defendant moved into Plaintiff's upstairs apartment. This shift in living arrangements marked the beginning of a more direct and profound influence by Defendant over Plaintiff's life.

62. Defendant became increasingly controlling, moody, and financially burdensome, failing to pay rent in her units in her house in Golden and contributing to the eventual foreclosure of Plaintiff's house.  He was aware that she was trying to save her property from foreclosure and took this action deliberately to ruin her financially. The proximity of the defendant was also strategic because it allowed the Defendant to exert greater control and manipulation, significantly impacting the family dynamics and Plaintiff's well-being.

63. Plaintiff had also learnt that Defendant was married and had a child by the name Jonathan Frenchin. When Plaintiff called him out for the same, he stated, in defense, that he did not inform her of his actual marital status and having two children because she would have declined his advances.

64. In 1990, Plaintiff moved to 3482 W. Berry to rent out both her units. At this point Plaintiff's abuse by Defendant escalated. The defendant beat her, strangled her, and threw her down a flight of stairs. He even went to the extent of locking her out of her house and she was compelled to move into her neighbor's house.

65. On the 24th of August 1992, Defendant kicked the expectant mother, Topa, out of his car after she started experiencing morning sickness and had to vomit while in the car. This was three days before the birth of her child.

17

66. A few moments later, on the 27th of August 1992, the same day, <u>the defendant came back and drove off again. He did this to taunt the plaintiff in the presence of his son, Jonathan to profoundly humiliated her and teach his son how to denigrate wom</u>en.

67. On the 29th of August 1992, Defendant and adamantly refused to take Plaintiff and her newborn home. Claiming she is abusive. Plaintiff was completed to contact her friend, Ewa Slizewski to come get her.

68. Mr. Frechin became enraged and attacked them throwing chair ,papers and other objects at them. Then he screamed to his children Heidi and John Frechin "Let's go children, Halina is abusive again". Consequently, Plaintiff and her friend contacted the<u> Littleton Police Department,</u> but no charges were filed against Defendants.

69. Littleton Police, social workers, and the judge failed to charge him with several assaults, including attempted murder, for locking me out of the house in pajamas in freezing temperature, sexual assault, Reckless Endangerment by leaving me Nine months pregnant on the highway in Scorching heat without water, and throwing my keys down to the Creek in the bushes forcing me to hitchhike to get spear keys.

70. There were many instances of child abuse by way of violence in front of children. There was also child endangerment and as a result of Mr. Frechin's pathological parenting style, but the police refused to investigate or protect me and my son from the defendant

71. Instead of the plaintiff was treated as the criminal and charged without investigation because the police are biased toward Mr. Frechin because his is a man who is from America.

72. Lakewood Police and Jefferson County Human Services, failed to act when the plaintiff reported child abuse via domestic violence instead, they contributed to the delinquency of the then minor by way of "parental kidnapping".

73. Plaintiff believed she was in a "free country where women have equal rights" until this devastating experience of being let down by the police and social workers.

**74. Abuse of Process and Fraud Upon the Juvenile Proceeding by court officers**

75. Consequently, Defendant sued Plaintiffs for custody claiming that she was mentally ill and abusive hence posing a threat to their baby. He even went to the extent of forcefully taking the baby from Plaintiffs after lying to the police. In 1993, there was a custody battle in court and Plaintiffs managed to get custody.

76. On 4th of January 2004, Plaintiff's child called the Police at the age of 11 after assaulting her.

77. Plaintiff's child had suddenly turned hostile and abusive, having been influenced by Defendant's slander campaign and psychological abuse.

78. Since then, Plaintiff has made significant effort to reignite the great relationship she had with her son Child was removed despite plaintiffs' objections and attempts to inform Lakewood Police that this is kidnapping in progress Lakewood Police removed the child without a warrant.

79. Next day Michelle Principado if Special unit for crimes against children came with tall and muscular female officer, and forced Plaintiff to sign she abused her child under duress being threatened by arrest.

80. Arapahoe County Human Services were involved with Social worker Julie Jarvis and State worker Jody Martinez and Governor Of state of Colorado Ritter all either siding with defendant or ignoring Plaintiff despite that Minor child Spencer Topa self-mutilated in Defendant's house due to forced separation from Mother. He wrote in his poems he just abused and held hostage.

81. Littleton Police, Officer Eric Miller and Officer Scunberg cops called when Spencer self, they failed to investigate and left child with an abuser.

82. Light of the world Church priests never responded to Plaintiff's complaint about egregious behavior of Heidi Frechin-Wilson, and when plaintiff called to express her concerns, she was threatened with arrest.

83. Archdiocese of Denver were also dismissive toward the Plaintiff and even threatened her with legal and criminal repercussions if she contacted them again instead of behaving like reasonable clergy and using spiritual and biblical principles to resolve the dispute with the two parties.

84. Frechin Wilson used fraud in court, when she told the judge and implied that the plaintiff had accused her of sexually molesting her son.

85. She also implied that the plaintiff was dangerous to children with no basis to support that assertion.

86. Frechin-Wilson has and continuously to now, represents herself as a Christian person of the cloth despite that she has violates laws and uses her status as a church official to alienate a mom from her only son.

87. She paints herself as a victim yet disregards the damage she does to others and contradicts the very sacraments she was expressed to hold dear.

88. By helping the defendant lie in court, sole custody of the child was awarded to the Defendant who prohibited Plaintiff from seeing her son.

89. She went to Catholic School and started to work as a Minister of Youth for Light of the world Catholic Church in Littleton.

90. Plaintiff's statement "On Christmas of 12-25- 2007 I went with a basket of fruit for my son.

91. Plaintiff was attacked and intimidated by Richard Frechin,and Heidi Frechin Wilson who both joined in berating me for the purpose of humiliating me as a mother in front of my child. They also called police on me in front of my child.

92. Because Frechin-Wilson and Mr. Frechin showed no remorse, I complained to the Light of the World Church. Because I made a written complaint Frechin-Wilson sought a restraining order against me in 2012.

93. The restraining order should not have been granted because at most I was being accused of slander or defamation. Even that would not be legally sustained because my complaints were valid.

94. I filed a motion to vacate the restraining order, but it was denied. I also could not afford legal assistance and legal aid would not assist me.

95. Again, I filed in 2023 and on September 27. The judge denied vacating the RO because Heidi Frechin claimed by implication that I was dangerous to children, and she feels victimized by me complaining to her employer, and that I accused her of molesting my son.

96. I made a statement in my complaint to the Light of the world church, that she molested (sabotaged) my son's childhood because that is the way we would describe it in my native tongue as a form of abuse.

97. Insisting on having a RO, Heidi Frechin Wilson continuously slanders and defames me to the community and my 30 years old son by painting me as a mentally ill person who is dangerous to children.

98. This is Continuous Wrong that has gone uncorrected for years because of the deliberate indifference and reckless disregard for the truth by the governing and supervisory agencies and agents. Their actions have contributed to the fraudulent concealment of the elaborate conspiracy because the gaslighted me into thinking that my experience was not real."

99. Because of the massive cover-up and fraudulent concealment committed by so many powerful actors, the plaintiff has only now been able to successfully discover the full extent of the legal abuse plan and how it continues to be utilized to silence her.

### E.  CAUSES OF ACTION

#### i.  First Cause of Action: Violation of 18 U.S.C. § 1589

100.      Plaintiff incorporates all foregoing paragraphs of this Complaint by reference as though set out in full herein.

101.      **Forced Labor Defined**

102.      Section 1589 of Title 18 of the United States Code prohibits the act of knowingly providing, obtaining, or maintaining labor or services of a person through threats of serious harm, physical restraint, or abuse of legal process.

103.    **Scope:** The statute covers various forms of forced labor, including situations involving physical restraint, threats, or coercion to compel a person to perform labor or services against their will.

104.    **Penalties:** Violations of 18 USC 1589 are serious offenses and can result in significant penalties, including imprisonment for up to 20 years and fines. If the offense involves death or if the victim is under 14 years old, the penalties can include life imprisonment or even the death penalty.

105.    **Restitution:** The statute allows for the imposition of restitution to victims of forced labor, providing them with compensation for any losses suffered because of the offense.

106.    Defendant's conduct, as delineated in the preceding factual background, unequivocally constitutes a flagrant transgression of the provisions set forth in 18 U.S. Code § 1589. This statute stands as a sentinel against the heinous crime of human trafficking, particularly emphasizing the reprehensible methods of force, fraud, or coercion utilized to subjugate individuals into labor exploitation.

107.    Throughout the chronicle of events recounted herein, Defendant systematically wielded tactics of coercion, manipulation, and exploitation to assert dominance over Plaintiff and their progeny. This insidious pattern of behavior, meticulously executed by Defendant, underscores a calculated strategy aimed at depriving Plaintiff of her inherent autonomy and agency.

108.    Richard Frechin misrepresented his marital status, fabricating tales of divorce and abuse, and concealing critical aspects of his personal life. Defendant ingeniously ensnared

PLAINTIFF'S ORIGINAL COMPLAINT - 23

Plaintiff into a web of deceit, thereby establishing a pretext for his subsequent nefarious actions.

109.    Exploiting moments of vulnerability and distress, Defendants insidiously ingratiated himself into Plaintiff's life, leveraging her emotional fragility to perpetuate their reign of control and manipulation.

110.    Defendants relentless campaign of violence and legal abuse inflicted upon Plaintiff has resulted in tangible physical injuries, ranging from bruises and lacerations to more severe injuries such as fractures sustained from being thrown down a flight of stairs.

111.    Defendant's parasitic presence in Plaintiff's life has exacted a heavy toll on her financial well-being. His failure to contribute to rent payments and his financial irresponsibility ultimately led to the foreclosure of Plaintiff's house, leaving her homeless and destitute.

112.    Defendant's manipulative tactics, including coercing Plaintiff into renting out both units of her property, further exacerbated her financial troubles, leaving her struggling to make ends meet and provide for herself and her child.

113.    These invisible wounds, while they may heal with time, serve as constant reminders of the trauma endured at the hands of Defendant, impeding Plaintiff's ability to move forward and reclaim a sense of normalcy in her life.

114.    The psychological toll exacted by Defendant's coercive tactics and manipulative behavior is immeasurable. Plaintiff has been subjected to a sustained campaign of emotional abuse, characterized by demeaning insults, threats, and manipulation, which have systematically eroded her sense of self-worth and autonomy.

115.     The infliction of physical harm, ranging from beatings to strangulation, and the callous act of hurling Plaintiff down a flight of stairs, represent egregious acts of violence perpetrated in furtherance of Defendant's nefarious objectives.

116.     Such abhorrent conduct not only engendered profound physical suffering but also instilled within Plaintiff a debilitating sense of fear and helplessness, thereby amplifying the coercive grip maintained by Defendant over her person.

117.     Moreover, the constant fear and anxiety engendered by Defendant's unpredictable outbursts and acts of violence have left Plaintiff in a perpetual state of hyper-vigilance, unable to find solace or respite from the looming specter of danger.

**118.     State Agency Defendants human trafficked under color of law**

119.     The utilization of state authorized force and coercion under the "color-of law" by Defendants are emblematic of the flagrant violation of the plaintiff's fundamental human rights.

120.     Furthermore, the Defendants calculated exploitation of Plaintiff's vulnerabilities (that she is an immigrant with a heavy polish accent), epitomizes the quintessential modus operandi of a labor traffickers.

121.     The harm Plaintiff suffered as a result of Defendant's abhorrent actions transcends mere physical injury, encompassing many enduring emotional, psychological, and socio-economic ramifications that have left an indelible mark on her life.

122.     The pervasive nature of Defendant's abuse and manipulation has had a corrosive effect on Plaintiff's social relationships and support networks. The stigma associated with

being a victim of domestic violence and sexual exploitation may have further contributed to Plaintiff's social isolation, leaving her feeling ashamed and ostracized from society.

123.    Perhaps most devastating of all is the impact of Defendant's actions on Plaintiff's relationship with her child. Defendants' relentless campaign to wrest custody of their child through false accusations and legal machinations has not only deprived Plaintiff of meaningful time with her child but has also irreparably damaged the parent-child bond.

124.    Moreover, Defendants' insidious influence over their child, as evidenced by the child's sudden hostility and aggression towards Plaintiff, underscores the enduring legacy of trauma inflicted by Defendant's actions, perpetuating a cycle of abuse and dysfunction within the familial unit.

125.    In summation, the harm suffered by Plaintiff as a result of Defendants' reprehensible actions is multifaceted and profound, encompassing physical, emotional, psychological, and socio-economic dimensions that have left her shattered and bereft.

126.    In light of the foregoing, Defendant's conduct unequivocally meets the threshold delineated in 18 U.S. Code § 1589, constituting a reprehensible form of sex trafficking perpetrated through force, fraud, and coercion.

127.    As such, Plaintiff implores this Honorable Court to adjudicate the matter with the utmost gravity and severity commensurate with the egregious nature of Defendant's transgressions.

**ii.  <u>Second Cause of Action: Abuse of Process</u>**

128.    Plaintiff incorporates all foregoing paragraphs of this Complaint by reference as though set out in full herein.

26

129.    Defendant's actions, ranging from initial misrepresentation to subsequent physical violence and baseless legal proceedings, constitute a reprehensible abuse of process. The concept of abuse of process encompasses the deliberate and improper manipulation of legal procedures for ulterior motives, rather than the pursuit of justice.

**130.    HEIDI FRECHIN AND JUDGE GRAHAM B. PEPER**

131.    At a hearing on September 27, 2023, before the HONORABLE GRAHAM B. PEPER, Judge of the Jefferson County Court, HEIDI and JUDGE PEPER took overt steps to aid in the conspiracy against the rights of the plaintiff and aid in the legal abuse of the plaintiff as part of the human trafficking scheme.

132.    Defendant Frenchin went to court and asked for a restraining order because the plaintiff complained to her employers about Ms. Frenchin's misconduct and lack of professionalism.

133.    The activity of writing letters of complaint to the Defendant's employer was a protected activity under the first amendment and using a restraining order to silence her was for the purposes of silencing the plaintiff to cover up the human trafficking that took place.

134.    Moreover, the Judge who presided over the case also took overt steps in furtherance of the conspiracy against the plaintiff and did so while acting under color of law and lacking subject-matter jurisdiction.

135.    Under Colorado law, a civil protection order may be issued by a court to protect a person from "abuse," which is defined broadly to include any of the following behaviors:

    a. Sexual assault or unlawful sexual behavior,

b. Stalking,

c. Assault,

d. False imprisonment,

e. Criminal mischief,

f. Criminal tampering, or

g. Any other crime against a person or property.

136.    Only if Ms. Frenchin had demonstrated to the court that the defendant's actions, including making complaints to the plaintiff's employer, constituted one of the forms of abuse listed above, could the court grant a protection order.

137.    As indicated in the attached transcript, Defendant Frenchin made no such allegations of abuse.

138.    The statements made about the Defendant were true and did not amount to slander because Ms. Frenchin never sued the plaintiff for slander.

139.    In this case, Defendant's conduct exemplifies a systematic abuse of various legal mechanisms, including deceit, violence, and frivolous litigation, all aimed at inflicting harm upon Plaintiff.

140.    Defendant's deliberate and malicious misuse of legal mechanisms, such as false accusations and contentious custody battles, serves as evidence of a calculated effort to systematically harass, intimidate, and harm Plaintiff.

141.     Through a meticulously orchestrated campaign of manipulation and deceit, Defendant exploited the vulnerabilities inherent in the legal system to perpetuate his agenda of control and domination over Plaintiff.

142.     This egregious abuse of legal processes not only demonstrates a blatant disregard for the sanctity of the judicial system but also constitutes a gross violation of Plaintiff's rights and dignity.

143.     Defendant's pattern of manipulation and deceit, meticulously designed to subvert the legal system for personal gain, represents a flagrant abuse of process that warrants redress. By engaging in such egregious conduct, Defendant not only perverted the intended purpose of legal procedures but also inflicted significant harm and suffering upon Plaintiff.

144.     It is abundantly clear that Defendant's actions were motivated not by a genuine pursuit of justice but rather by a selfish desire to exert power and control over Plaintiff. As such, Defendant's abuse of process represents a grave injustice that cannot be allowed to stand unchallenged.

145.     Plaintiff has endured profound and enduring emotional and psychological distress as a direct consequence of Defendant's relentless campaign of abuse. The sustained trauma inflicted by Defendant's actions has left Plaintiff emotionally scarred and psychologically traumatized, resulting in debilitating anxiety, depression, and post-traumatic stress disorder.

146.     The constant fear, anguish, and despair caused by Defendant's abuse have cast a dark shadow over every aspect of Plaintiff's life, rendering her unable to find solace or respite from the relentless torment inflicted upon her.

147.     In addition to the significant harm suffered by Plaintiff personally, Defendant's abusive conduct has also resulted in enduring damage to her familial relationships. The estrangement from her child, precipitated by Defendant's manipulative actions, represents a profound loss that continues to haunt Plaintiff to this day.

148.     Despite her best efforts to repair the damage caused by Defendant's interference, the irreparable rift created in her family serves as a painful reminder of the lasting consequences of his abuse.

149.     Given the egregious nature of Defendant's abuse of process and the substantial harm inflicted upon Plaintiff, she seeks both compensatory and punitive damages as redress for the injustices suffered.

150.     Compensatory damages are necessary to reimburse Plaintiff for the tangible and intangible losses she has incurred as a result of Defendant's misconduct, including medical expenses, lost income, and emotional distress.

151.     Additionally, punitive damages are warranted to deter Defendant and others from engaging in similar misconduct in the future and to send a clear message that such behavior will not be tolerated in a civilized society.

### iii. <u>Third Cause of Action: Defamation and Defamation per Quod</u>

152.     Plaintiff incorporates all foregoing paragraphs of this Complaint by reference as though set out in full herein.

153.     Courts in Colorado have recognized that defamation per quod claims can be pursued when the defamatory statements do not fall within the categories of defamation per se,

such as statements alleging criminal conduct, certain types of professional misconduct, or statements related to a person's business or profession.

154.     Defendants Frechin-Wilson and Mr. Frechin, with malicious intent, intentionally made and disseminated false and defamatory statements about Toma's character, including baseless accusations of mental illness and abusive behavior. They also used a restraining order to imply that the plaintiff was dangerous to children.

155.     These statements were not only untrue but were made with full knowledge of their falsity and with the deliberate purpose of harming Plaintiff's reputation and familial relationships.

156.     The false allegations of mental illness and abuse, among others, have inflicted profound damage on Plaintiff's reputation and standing within her community.

157.     These defamatory statements, crafted and spread by the Defendant, have tarnished Plaintiff's good name and undermined her credibility, causing irreparable harm to her personal and professional life.

158.     By knowingly disseminating false information about Plaintiff's mental health and conduct, Defendant has acted with a reckless disregard for the truth, demonstrating a callous indifference to the devastation wrought upon Plaintiff's life.

159.     Moreover, Defendant's defamatory conduct was not an isolated incident but rather a calculated campaign designed to inflict maximum harm upon Plaintiff. The sustained nature of these false accusations, coupled with Defendant's malicious intent, underscores the severity of his actions and the egregiousness of his defamation.

31

160.     As a direct result of Defendant's defamatory statements, Plaintiff has suffered extensive harm, both tangible and intangible. The damage inflicted upon Plaintiff's reputation is immeasurable, with her good name irreparably sullied by the baseless accusations propagated by Defendant.

161.     The false allegations of mental illness and abuse have caused Plaintiff to endure significant emotional distress, robbing her of peace of mind and subjecting her to unwarranted scrutiny and ridicule.

162.     Defendant's defamatory campaign has had far-reaching consequences, extending beyond mere reputational harm. The loss of custody of her child, precipitated by Defendant's malicious actions, represents a profound and enduring injury inflicted upon Plaintiff.

163.     The severance of the mother-child bond, facilitated by Defendant's defamatory conduct, has left Plaintiff bereft and emotionally shattered, with ongoing efforts to heal the wounds inflicted upon her familial relationships.

164.     In addition to the intangible harm suffered by Plaintiff, there are concrete and quantifiable damages resulting from Defendant's defamation. Plaintiff has incurred financial losses, including legal expenses incurred in defending against baseless allegations, as well as the costs associated with seeking to repair her damaged reputation. The cumulative impact of this damage, both economic and emotional, is immeasurable and it warrants redress from this Honorable Court.

165.     In light of the egregious nature of Defendant's defamation and the profound harm inflicted upon Plaintiff, she seeks comprehensive relief to address the multifaceted injuries sustained as a result of Defendant's wrongful conduct.

166.     Plaintiff seeks compensatory damages to remedy the tangible and intangible harms suffered, including but not limited to damage to her reputation, emotional distress, and financial losses incurred as a direct result of Defendant's defamatory statements. This damage should be calculated based on the extent of harm inflicted upon Plaintiff, taking into account both the immediate and long-term repercussions of Defendant's defamation.

167.     Additionally, Plaintiff seeks punitive damages as a deterrent against future misconduct and as a punitive measure to hold Defendant accountable for his malicious actions. Punitive damages are warranted in this case to send a clear message that defamation will not be tolerated and that those who engage in such reprehensible conduct will be held liable for their actions.

168.     Furthermore, Plaintiff seeks injunctive relief to prevent further dissemination of Defendant's defamatory statements and to safeguard against future harm to her reputation and well-being. This may include restraining orders or other legal measures designed to curtail Defendant's ability to continue spreading false information about Plaintiff.

### iv. Fourth Cause of Action: Breach of Fiduciary Duty

169.     Plaintiff incorporates all foregoing paragraphs of this Complaint by reference as though set out in full herein.

**170.     Churches, Cities and Counties**

171.    These agencies and the individual agents that they worked for owed the plaintiff a fiduciary duty because she was a member of their church and a resident who reached out to them for help when she was being exploited. These agencies were created to help people in this precise situation and have a special relationship with the victims they assist once a complaint is lodged.

**172.    Richard Frechin**

173.    The genesis of the tumultuous relationship between Plaintiff and Defendant traces back to 1987 when they first crossed paths through a mutual tenant, Darrell Jones, at Plaintiff's property in Golden, Colorado.

174.    What initially seemed like an innocuous encounter soon unfolded into a saga marked by deceit, manipulation, and egregious breaches of trust. Defendant, under the guise of a single, divorced man with a daughter named Heidi, initiated contact with Plaintiff, setting the stage for a relationship built upon a foundation of falsehoods.

**175.    <u>Special Relationship</u>**

176.    Defendant's misrepresentation of his marital status from the outset established a precedent of deception that would permeate the entirety of the relationship. By concealing his true marital status and fabricating a narrative of divorce from an abusive ex-wife, Kate Walker, Defendant laid the groundwork for manipulation, preying upon Plaintiff's vulnerability and trust.

177.    The initial interaction, characterized by misleading disclosures and calculated advances, served as a harbinger of the manipulation and deceit that would ensue, breaching the fiduciary duty owed to Plaintiff.

34

PLAINTIFF'S ORIGINAL COMPLAINT - 34

178.     The dynamics between Plaintiff and Defendant took a significant turn in 1989 when Defendant transitioned from tenant to cohabitant, moving into Plaintiff's upstairs apartment following Darrell Jones's departure.

179.     This shift in living arrangements heralded a period of heightened control and financial exploitation by Defendant, who gradually asserted dominion over Plaintiff's life and resources.

180.     Defendant's failure to fulfill financial obligations, including rent payments, coupled with his contribution to the foreclosure of Plaintiff's property, exemplifies a blatant breach of fiduciary duty, as he abused his position of trust to exert control and exploit Plaintiff's vulnerabilities for personal gain.

181.     As the relationship between Plaintiff and Defendant intensified, so did the frequency and severity of Defendant's abusive behavior. The transition from manipulation to outright physical violence manifested in a series of harrowing incidents, including beatings, strangulation, and the physical assault that culminated in Plaintiff being thrown down a flight of stairs in 1990.

182.     These acts of violence not only caused tangible harm but also inflicted deep-seated emotional trauma upon Plaintiff, constituting a gross breach of fiduciary duty as Defendant callously disregarded his duty to act in Plaintiff's best interests and instead subjected her to cruelty and harm.

183.     Defendant's conduct extended beyond mere abuse, encompassing a pattern of negligent and reckless behavior that further underscored his betrayal of fiduciary trust. On

August 24, 1992, Defendant callously abandoned Plaintiff, who was pregnant at the time, after she fell ill, displaying a callous disregard for her well-being and safety.

184.     This act of abandonment, occurring just days before the birth of Plaintiff's child, exemplifies Defendant's wanton disregard for his fiduciary obligations, as he prioritized his own desires over Plaintiff's welfare.

185.     Similarly, Defendant's actions on August 27, 1992, wherein he absconded on the day of Plaintiff's delivery, leaving her stranded and humiliated in the presence of his son, Jonathan, further highlight his reckless disregard for Plaintiff's rights and well-being. (He kept going and coming back

186.     The culmination of Defendant's betrayal came in the form of a malicious custody battle, wherein he weaponized baseless accusations of mental illness and abuse to wrest custody of Plaintiff's child from her.

187.     The defendant's calculated campaign of parental alienation, which included forcibly removing the child from Plaintiff's custody and perpetuating false narratives to authorities, constituted a grave breach of fiduciary duty.

188.     By manipulating legal proceedings and exploiting the vulnerabilities of the judicial system, Defendant inflicted irreparable harm upon Plaintiff and her child, depriving them of their fundamental rights and perpetuating a cycle of trauma and estrangement.

189.     The cumulative effect of Defendant's actions, spanning from manipulation and abuse to parental alienation, has inflicted profound and enduring psychological and emotional distress upon Plaintiff.

190.     The scars left by Defendant's betrayal run deep, casting a shadow of fear, mistrust, and trauma over every aspect of Plaintiff's life. The emotional toll exacted by Defendant's breaches of fiduciary duty is immeasurable, as Plaintiff grapples with the lingering effects of trauma and betrayal, struggling to rebuild shattered trust and reclaim agency over her life and relationships.

191.     In summary, Defendant's systematic betrayal of fiduciary duty, characterized by deception, manipulation, abuse, and parental alienation, constitutes egregious violations of trust and breaches of ethical responsibility.

192.     Plaintiff seeks redress for the profound harm inflicted upon her and her child, pursuing appropriate relief to rectify the injustices perpetrated by Defendant and hold him accountable for his actions.

### v.  **Fifth Cause of Action: Fraud**

193.     Plaintiff incorporates all foregoing paragraphs of this Complaint by reference as though set out in full herein.

**194.     Defendants et al.**

195.     Under the Colorado Governmental Immunity Act (CGIA), which is similar to the Colorado Tort Claims Act, there are certain immunities granted to governmental entities and their employees, including county officials, for certain actions. However, there are exceptions to these immunities.

196.     The CGIA generally grants immunity to public employees acting within the scope of their employment for tort claims, which includes claims for negligence. However, there are exceptions to this immunity, and fraud is one of the exceptions listed in the CGIA.

197.     The defendants collectively committed and endorsed fraud upon the court to gaslight the plaintiff and cover up their plot to traffic her and maintain her status as a perpetual victim.

198.     The judges lacked subject-matter jurisdiction in all cases and therefore do not qualify for judicial immunity. Moreover, the judgements that they made were void because they were fraudulently obtained.

199.     The Church and Archdiocese clergy worked to cover up the abuse by pretending it never happened and now using the power vested in them by the church to address the allegations.

200.     Kate Walker and Frechin-Wilson pretended to be reasonable people but were working against the plaintiff to deprive her of her rights because she is from another country. They misrepresented themselves in and out of court and also told lies on the plaintiff to her son. They still do it even now because they are relentless.

**201.     Richard Frechin**

202.     Defendant's misrepresentation of his marital status forms the cornerstone of the fraudulent conduct alleged in this case. By presenting himself as a single, divorced individual, Defendant misled Plaintiff into believing that he was free from any prior marital commitments.

203.     This misrepresentation was not only deliberate but also calculated to induce Plaintiff into forming a romantic relationship with him. The significance of this misrepresentation cannot be overstated, as it fundamentally altered the nature of the relationship between Plaintiff and Defendant.

38

204.    The misrepresentation of marital status is a classic example of fraudulent conduct in legal terms. Fraud, broadly defined, involves the intentional deception of another party for the purpose of gaining some benefit or causing harm.

205.    In this case, Defendant's misrepresentation of his marital status was aimed at gaining Plaintiff's trust and affection while concealing his true circumstances. This deception was material to the formation of the relationship between Plaintiff and Defendant, as it affected Plaintiff's decision-making and understanding of the situation.

206.    Moreover, Defendant's misrepresentation of his marital status continued throughout the duration of the relationship, compounding the harm caused to Plaintiff. By maintaining this false pretense, Defendant perpetuated a cycle of deceit and manipulation that ultimately led to significant emotional and psychological distress for Plaintiff.

207.    The ongoing nature of the misrepresentation underscores the fraudulent intent behind Defendant's actions and strengthens Plaintiff's case for relief.

208.    In addition to misrepresenting his marital status, Defendant engaged in a pattern of false allegations and manipulation designed to control and exploit Plaintiff. One of the most egregious examples of this conduct is Defendant's false claim that his ex-wife, Kate Walker, was abusive and had filed for divorce.

209.    By portraying himself as a victim of abuse, Defendant sought to elicit sympathy and empathy from Plaintiff, thereby manipulating her emotions and gaining her trust.

210.    This manipulation was not an isolated incident but rather part of a broader pattern of deceit and manipulation that characterized Defendant's interactions with Plaintiff. Throughout their relationship, Defendant employed various tactics to exert control over

Plaintiff and manipulate her into complying with his wishes. These tactics included emotional manipulation, gaslighting, and the exploitation of vulnerabilities such as Plaintiff's grief over the death of Dave.

211.     The false allegations and manipulation perpetrated by Defendant had far-reaching consequences for Plaintiff, both emotionally and psychologically. By preying on Plaintiff's empathy and compassion, Defendant undermined her ability to make informed decisions and exert agency in the relationship. Instead, the Plaintiff was manipulated into acting against her own interests and enduring mistreatment at the hands of Defendant.

212.     Moreover, Defendant's false allegations and manipulation contributed to a climate of fear and intimidation within the relationship, further exacerbating Plaintiff's vulnerability. By instilling fear and uncertainty in Plaintiff, Defendant was able to maintain control and perpetuate the cycle of abuse and manipulation.

213.     In addition to misrepresenting his marital status, Defendant also concealed crucial information about his familial responsibilities, specifically his children. Despite presenting himself as a single, divorced individual, Defendant failed to disclose the existence of his other children, including Jonathan Frenchin.

214.     This deliberate concealment deprived Plaintiff of vital information that would have impacted her decision-making and understanding of the situation.

215.     The concealment of children is a serious matter with profound implications for the dynamics of any relationship. By withholding information about his children, Defendant deprived Plaintiff of the opportunity to make informed decisions about her involvement

40

with him. This concealment also speaks to Defendant's lack of honesty and transparency, further undermining Plaintiff's trust and confidence in him.

216.    Defendant's concealment of his children suggests a pattern of deceit and manipulation aimed at maintaining control over Plaintiff. By hiding this crucial aspect of his life, Defendant sought to present himself in a more favorable light and avoid potential consequences for his actions. This deception was not only dishonest but also calculated to benefit Defendant at Plaintiff's expense.

217.    The concealment of children by Defendant represents a clear instance of fraud, as it involved the deliberate withholding of material information for personal gain. This conduct had significant implications for Plaintiff's understanding of the situation and her ability to make informed decisions. As such, it forms a central part of Plaintiff's allegations and warrants careful consideration by the court.

218.    The combination of financial exploitation and physical abuse perpetrated by Defendant highlights the extent of his fraudulent conduct and the profound harm caused to Plaintiff. By exploiting Plaintiff's vulnerability and subjecting her to mistreatment, Defendant furthered his own interests at Plaintiff's expense, demonstrating a callous disregard for her well-being.

219.    Defendant's imposition of a financial burden and perpetration of physical abuse against Plaintiff constitute clear instances of fraud, as they involved the intentional exploitation and mistreatment of Plaintiff for personal gain.

220.    Defendant furthered his fraudulent conduct by fabricating false allegations of mental illness and abuse against Plaintiff in the custody suit. By falsely accusing Plaintiff

41

and misleading the court, Defendant sought to gain custody of their child through fraudulent means, thereby depriving Plaintiff of her parental rights and subjecting her to further harm and distress.

221.     Defendant's fabrication of false allegations in the custody suit represents a deliberate attempt to manipulate the legal system for personal gain. By presenting false evidence and making baseless accusations against Plaintiff, Defendant sought to undermine her credibility and paint her in a negative light, thereby strengthening his own position in the custody proceedings.

222.     Moreover, Defendant's actions in the custody suit highlight a pattern of deceit and manipulation that characterized his interactions with Plaintiff throughout their relationship. By resorting to dishonest and underhanded tactics, Defendant demonstrated a blatant disregard for the truth and a willingness to exploit the legal system for his own benefit.

223.     The fabricated allegations in the custody suit had far-reaching consequences for Plaintiff, both legally and emotionally. By falsely accusing Plaintiff of mental illness and abuse, Defendant not only undermined her credibility in the eyes of the court but also subjected her to further stigma and scrutiny. This conduct further exacerbated Plaintiff's emotional distress and contributed to a sense of injustice and betrayal.

224.     The harm and damage suffered by the Plaintiff in this case are multifaceted and extend across various aspects of her life, including emotional, psychological, physical, financial, and relational.

225.     The Plaintiff endured significant emotional and psychological trauma as a result of the Defendant's fraudulent conduct and abusive behavior. The manipulation, deceit, and gaslighting perpetrated by the Defendant undermined the Plaintiff's sense of self-worth, agency, and security. The constant cycle of deception and control eroded the Plaintiff's trust and confidence in herself and others, leaving her with feelings of betrayal, confusion, and helplessness.

226.     Moreover, the Plaintiff suffered from anxiety, depression, and post-traumatic stress disorder (PTSD) as a direct result of the Defendant's abusive actions and the trauma inflicted upon her.

227.     The ongoing emotional and psychological distress experienced by the Plaintiff has had a profound impact on her overall well-being and quality of life, impairing her ability to function effectively and engage in meaningful relationships.

228.     The Plaintiff also endured physical harm at the hands of the Defendant, including incidents of violence such as beating, strangling, and throwing her down a flight of stairs. These acts of physical abuse resulted in injuries ranging from bruises and lacerations to more serious injuries requiring medical attention.

229.     The physical harm inflicted upon the Plaintiff not only caused pain and suffering but also left lasting scars, both visible and invisible, that serve as constant reminders of the trauma she endured.

230.     The Plaintiff suffered significant financial harm as a result of the Defendant's fraudulent conduct and financial exploitation. The Defendant's failure to contribute financially, including his failure to pay rent and his role in the foreclosure of the Plaintiff's

43

PLAINTIFF'S ORIGINAL COMPLAINT - 43

house, left her in a precarious financial situation. The loss of her home and financial stability compounded the Plaintiff's distress and vulnerability, forcing her to rely on others for support and assistance.

231.    The Plaintiff's relationships with her child and other individuals were also adversely affected by the Defendant's fraudulent conduct and manipulative behavior. The Defendant's false allegations and attempts to gain custody of their child strained the Plaintiff's relationship with her child and caused additional emotional pain and distress.

232.    Moreover, the Plaintiff's trust and confidence in others were undermined by the Defendant's deceitful actions, making it difficult for her to form meaningful connections and maintain healthy relationships.

233.    The Plaintiff suffered legal and social harm due to the Defendant's fraudulent conduct and false allegations. The Defendant's attempts to manipulate the legal system and undermine the Plaintiff's credibility in court had profound consequences for her legal rights and social standing.

234.    The stigma and scrutiny resulting from the Defendant's false accusations of mental illness and abuse further compounded the Plaintiff's distress and made it difficult for her to seek justice and support.

**235.    Heidi-Frechin**

236.    Defendant Frechin-Wilson is a fraud who holds herself out to be a church leader and youth leader, but she is an abuser and human trafficker who is using fraud to disparage me to others and ruin my personal and business relationships. She also uses fraud to deprive me of my right to free speech and due process of law by working with a corrupt judge.

44

### vi. <u>Sixth Cause of Action: Violation of 42 U.S.C. § 1983</u>

237.     Plaintiffs re-allege and incorporate paragraphs 1 through 48, inclusive, as though

fully set forth at this point, as they relate to a Cause of Action for a violation of their civil

rights under the Fou11eenth Amendment to the United States Constitution, with regard to

the violation of their rights of familial association with one another occasioned by the

removal of the Minor from the Mother's care and custody in the absence of any exigency

and/or court order and/or warrant.

238.     Plaintiffs are informed and believe and thereon allege that the right to familial

association guaranteed under the Fourteenth Amendment is "clearly established" such that

a reasonable social worker or police officer in Defendants' situation would know it is

unlawful to remove a child from the care, custody, and control of its parents or to question,

threaten, examine, or search a child in the absence of exigent circumstances without first

obtaining a warrant to do

239.     In addition, there is a clearly established due process right not to be subjected to

false accusations on the basis of false evidence that was deliberately fabricated by the

government such that a reasonable social worker Defendants' situation would know it is

unlawful to lie, fabricate evidence, and/or suppress exculpatory evidence.

240.     Plaintiff brings forth a claim against Defendant, alleging egregious violations of her

fundamental rights enshrined in the First Amendment to the United States Constitution, as

applied to the states through the Fourteenth Amendment.

241.     These violations stem from Defendant's deliberate and calculated efforts to suppress and impede Plaintiff's ability to freely express herself and seek redress for grievances, thereby inflicting grave harm upon her.

242.     The First Amendment stands as a cornerstone of American democracy, safeguarding the rights of individuals to engage in free speech, assemble peacefully, and petition the government for a redress of grievances. This cherished freedom encompasses not only the right to express oneself without censorship or restraint but also the right to seek recourse and address grievances through lawful means.

243.     Defendant's transgressions against Plaintiff's First Amendment rights manifest in multifaceted forms, each constituting a distinct affront to the principles of free expression and redress.

244.     Defendant systematically manipulated and coerced Plaintiff into silence, exploiting her vulnerability and exerting control over her autonomy. Through deceit and subterfuge, Defendant obscured his true marital status and familial obligations, deceiving Plaintiff into a relationship founded upon falsehoods and deceit.

245.     By concealing his true identity and marital status, Defendant deprived Plaintiff of the ability to make informed decisions about her associations, thereby impeding her capacity to freely express herself and engage in meaningful relationships.

246.     Moreover, Defendant's actions escalated beyond mere deception, culminating in a campaign of intimidation and violence aimed at silencing Plaintiff's voice and stifling her dissent.

247.    Defendant's physical assaults, including beatings, strangulation, and other forms of abuse, not only inflicted physical harm upon Plaintiff but also instilled a pervasive atmosphere of fear and coercion, compelling Plaintiff to retreat into silence out of fear for her safety and well-being.

248.    By resorting to such violent and oppressive tactics, Defendant not only violated Plaintiff's bodily integrity but also trampled upon her fundamental right to express herself without fear of reprisal or retaliation.

249.    Furthermore, Defendant's efforts to suppress Plaintiff's speech extended beyond the confines of their private interactions, permeating into the public sphere and obstructing Plaintiff's ability to seek redress for grievances through lawful channels.

250.    Defendant's malicious interference in Plaintiff's custody proceedings, including false accusations of mental illness and abusive behavior, aimed to discredit Plaintiff's credibility and undermine her ability to assert her parental rights.

251.    By manipulating the legal system, Defendant deprived Plaintiff of her right to a fair and impartial hearing, thereby obstructing her access to justice and impeding her efforts to address legitimate grievances through proper legal channels.

252.    By these actions, DEFENDANTS, and each of them, interfered and/or attempted to interfere with Plaintiffs' constitutional rights to familial association under the Fourteenth Amendment, as well as those rights under applicable California Law rising to the level of a constitutionally protected right.

253.    As the direct and proximate result of these DEFENDANTS' actions, Plaintiffs have suffered, and will continue to suffer, physical, mental, and emotional injury, all to an extent

and in an amount subject to proof at trial. Plaintiffs have also incurred, and will continue to incur, attorney's fees, costs and expenses, including those authorized by 42 U.S.C. Section 1988, to an extent and in an amount subject to proof at trial.

254.     Every one of the Social Worker, judges, attorneys, police officer Defendants DOES, and each of them, acted with malice and with the intent to cause injury to Plaintiffs, or acted with a willful and conscious disregard of the rights of Plaintiffs in a despicable, vile, and contemptible manner. Therefore, Plaintiffs are entitled to an award of punitive damages against the individual Defendants in their personal capacities.

255.     Regarding the County of Jefferson, Plaintiff is informed, believes and alleges that the County of Jefferson has a policy of indemnifying its social workers against punitive damages awards. Thus, Plaintiff is informed and believes on such basis alleges that the County of Jefferson approves of the misconduct of its social service workers as a matter of policy.

256.     In a more recent case in September 2023, plaintiff was deprived of her due process rights in court because the judge granted a restraining order against her because she is from another country and has a thick accent.

257.     Even though there was no legal basis to grant a restraining order. The plaintiff is allowed to make genuine complaints about the Frechin-Wilson and warn the public. The fraudulent restraining orders is a threatening and coercive way of denying the plaintiff her freedom of speech, equal protection under the law, and access to due process.

258.     It can be proven that Jefferson County has an unspoken policy of not prosecuting perjury as a crime. This policy failure and failure to supervise and maintain control over

the courts have directly harmed the plaintiff because the defendants were allowed to commit perjury countless times and subvert the wheels of justice.

259.    Jefferson County, Littleton Police, and Lakewood Police have a practice, custom, and policy of not preventing perpetrators such as Mr. Frechin from intimidating witnesses against them. Because of this common breach of fiduciary duties to the victims of crimes, criminals are empowered to use the courts to exact even more dominance over their victim and obstruct justice.

### vii. <u>Seventh Cause of Action: Conspiracy against rights 42 USC 1985</u>

260.    Plaintiff incorporates all foregoing paragraphs of this Complaint by reference as though set out in full herein.

261.    DEFENDANTS, and each of them, were at all relevant times acting under color of law when they acted, agreed, and/or conspired to enforce a fraudulent restraining order against the plaintiff and silence her from speaking about her abuse.

262.    DEFENDANTS, and each of them, were at all relevant times acting under color of law when they acted, agreed, and/or conspired to unlawfully remove, detain, question, threaten, and/or examine the Minor. In doing the things alleged hereinabove, Defendants, and each of them, did so without proper justification or authority, and without probable cause, exigency, or court order.

263.    DEFENDANTS' actions were taken with deliberate indifference to Plaintiffs' due process rights and/or rights to uninterrupted familial association and/or privacy.

264.    DEFENDANTS, and each of them, maliciously conspired to violate the civil rights of the Plaintiff, including violation of the Plaintiff's rights found in the Fourteenth Amendment

of the United States Constitution, by, but not limited to, removing, detaining, and continuing to detain, the Minor from the care, custody, and control of his Mother without proper or just cause and/or authority; by subjecting the Minor to examinations without consent, authority, or the presence of his mother; by threats, intimidation or coercion that the Minor would be removed from the appropriate temporary relative placement, maternal grandmother, and placed in foster care to obtain evidence and testimony; and by maliciously falsifying evidence, and presenting fabricated evidence to a court of law, and maliciously refusing to provide exculpatory evidence during the pendency of court actions all in violation of Colorado Government Codes and in violation of the Constitutional rights of the Plaintiff.

265.    Plaintiffs re-allege and incorporate paragraphs 18 through 42, inclusive, as though fully set forth at this point, as they relate to a Cause of Action for a violation of their civil rights under the Fourteenth Amendment to the United States Constitution by threat, intimidation or coercion, with regard to the violation of her rights to due process of law.

### viii.    **Eighth Cause of Action: Violation of 42 USC 1986 – Neglect to Prevent**

266.    "Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an

50

action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action; and if the death of any party be caused by any such wrongful act and neglect, the legal representatives of the deceased shall have such action therefor, and may recover not exceeding five thousand dollars damages therein, for the benefit of the widow of the deceased, if there be one, and if there be no widow, then for the benefit of the next of kin of the deceased."

267.    In summary, 42 U.S. Code § 1986 imposes liability on individuals who have knowledge of civil rights violations that are about to be committed, have the power to prevent them, but neglect or refuse to do so. If the wrongful act occurs and damages result, these individuals may be held liable to the injured party for damages that could have been prevented through reasonable diligence.

268.    Defendant Agency include the named churches, cities, counties and state.

269.    The Defendant Agency is responsible for overseeing the operation and administration of the court system within [Jurisdiction].

270.    Despite its duties and responsibilities, the Defendant Agency has failed to implement adequate policies and procedures to address corruption amongst court officials.

271.    Over an extended period, corrupt court officials within the jurisdiction, including judges, clerks, and other personnel, engaged in activities conducive to human trafficking and the judicial oversight committee was made aware.

272.    The lack of effective oversight, accountability mechanisms, and internal controls within the Defendant Agency facilitated and perpetuated a culture of corruption and exploitation within the court system.

273.     As a direct result of the Defendant Agency's negligence and failure to prevent corruption amongst court officials, the Plaintiff, Topa, became a victim of human trafficking.

274.     The Plaintiff alleges the following cause of action against the Defendants:

275.     **Negligence**: The Defendants breached their duty of care to the Plaintiff by failing to implement reasonable policies and procedures to prevent corruption amongst court officials, thereby creating an environment conducive to human trafficking.

276.     **Failure to Prevent Human Trafficking and deprivation of rights**: The Defendant Agency's negligence directly contributed to the Plaintiff's victimization and the continuous human trafficking within Jefferson County, Colorado. The Defendant Agency's failure to fulfill its obligations to protect vulnerable individuals from exploitation constitutes a violation of the Plaintiff's rights.

### ix. <u>Ninth Cause of Action Gross Negligence</u>

277.     The Defendant Church and Archdiocese are religious organizations operating within the State of Colorado, providing spiritual guidance, pastoral care, and community services to its members.

278.     Frechin-Wilson, a senior official and leader within the Defendant Church, held a position of trust and authority within the organization.

279.     Despite her position of authority, Frechin-Wilson engaged in fraudulent conduct by deceiving church members out of custody of their children, making fraudulent claims to a then minor child about their mother, and bearing false witness in a court of law.

280.     She acted in complete opposition to the morals and values she espoused.

52

281.     The Ninth Commandment, as it appears in the King James Version (KJV) of the Bible, is often phrased as follows: "You shall not bear false witness against your neighbor."

282.     This commandment emphasizes the importance of honesty, integrity, and truthfulness in one's interactions with others, particularly in legal proceedings and matters of testimony. It serves as a moral and ethical guideline against lying, perjury, and deceitful behavior that may harm others or undermine justice.

283.     The Fifth Commandment, as it appears in the King James Version (KJV) of the Bible, is often phrased as follows:

284.     "Honor thy father and thy mother: that thy days may be long upon the land which the Lord thy God giveth thee."

285.     This commandment emphasizes the importance of showing respect, reverence, and obedience to one's parents. It serves as a foundational principle in fostering familial relationships, promoting gratitude for parental care and guidance, and contributing to the stability and well-being of society as a whole

286.     Frechin-Wilson and the church taught my child not to honor me which is direct contradiction to the commandments of God the Almighty which the church is supposed to uphold and adhere to.

287.     The Plaintiff, Topa, a member of the Defendant Church and Archdiocese, was directly harmed by the fraudulent conduct of Frechin-Wilson. The Plaintiff suffered financial losses, emotional distress, and damage to their relationship with the church community as a result of the fraudulent actions.

288.     The Defendant Church had a duty to exercise reasonable care and diligence in supervising and disciplining its officials, including Frechin-Wilson, to prevent harm to its members and maintain the integrity of the organization.

289.     Despite having knowledge of Frechin-Wilson's fraudulent conduct, the Defendant Church failed to take appropriate action to discipline or remove Frechin-Wilson from her position of influence.

290.     The Defendant Church and Archdioceses' gross negligence in failing to discipline the defendant and prevent further harm to its members constitutes a breach of its duty of care owed to the Plaintiff and other members of the church community.

291.     The Plaintiff alleges the following cause of action against the Defendant Church:

292.     The Defendant Church's gross negligence in failing to discipline Frechin-Wilson for her fraudulent conduct directly contributed to the Plaintiff's harm and damages. The Defendants' failure to fulfill its duty to supervise and discipline its officials constitutes gross negligence, warranting liability under Colorado law.

**x.   Tenth Cause of Action: Intentional Infliction of Emotional Distress based on Extreme and Outrageous Conduct**

293.     Plaintiff incorporates all foregoing paragraphs of this Complaint by reference as though set out in full herein.

**294.     Richard Frechin**

295.     Plaintiff contends that Defendant initiated a deceitful and manipulative relationship with her in 1987, under false pretenses. At the outset, Defendant misrepresented his marital status, presenting himself as a single, divorced man with a daughter named Heidi.

54

296.     This initial encounter, facilitated through a mutual acquaintance, Darrell Jones, set the stage for a relationship built upon deception and manipulation. Despite Plaintiff's reluctance and her expressed interest in another individual, Defendant persisted in his pursuit, exploiting Plaintiff's vulnerabilities and capitalizing on her emotional state following the untimely death of her romantic interest, Dave, in a tragic car accident in Black Hawk.

297.     As the relationship progressed, Defendant's deceit only deepened, as did the level of manipulation exerted upon Plaintiff. Defendant continued to conceal his true marital status, claiming that his ex-wife, Kate Walker, was abusive and had initiated divorce proceedings.

298.     This deliberate misrepresentation further entangled Plaintiff in a web of lies, eroding her trust and distorting her perceptions of reality. Defendant's persistent pursuit, despite Plaintiff's reservations and clear indications of her interest in another individual, underscored his disregard for her autonomy and well-being.

299.     Throughout their relationship, Defendant's deceitful conduct remained constant, permeating every aspect of their interactions and shaping the course of events that followed.

300.     Plaintiff contends that Defendant's intentional misrepresentation of his marital status, coupled with his manipulation of her vulnerabilities, constituted a deliberate and calculated effort to establish control over her life and emotions.

301.     As the relationship between Plaintiff and Defendant unfolded, Defendant's actions escalated from deceit to outright physical and emotional abuse. Plaintiff alleges that

Defendant subjected her to violent and traumatic incidents, inflicting significant harm on her physically and emotionally.

302.     Defendant's abusive behavior peaked with physical violence, including beating, strangling, and throwing Plaintiff downstairs. These brutal assaults left Plaintiff with lasting injuries and scars, both visible and invisible, and a profound sense of fear and vulnerability.

303.     Defendant's actions caused Plaintiff not only physical pain but also severe emotional distress, as she grappled with the trauma of being subjected to such brutal and unprovoked attacks.

304.     Moreover, Defendant's pattern of physical abuse was often accompanied by verbal and emotional manipulation, further exacerbating Plaintiff's suffering. Plaintiff contends that Defendant's calculated use of violence and intimidation tactics served to exert control over her, instilling a sense of powerlessness and dependence.

305.     In addition to the physical and emotional abuse inflicted upon Plaintiff, Defendant also exerted control over her life through financial exploitation and manipulation. Plaintiff alleges that Defendant took advantage of her trust and vulnerability to gain control over her finances, ultimately contributing to the foreclosure of her property and exacerbating her emotional distress.

306.     Defendant's financial exploitation took various forms, including failing to contribute his fair share of expenses, refusing to pay rent, and manipulating Plaintiff into shouldering the financial burden of their shared living arrangements.

307.     This ongoing financial strain placed a significant strain on Plaintiff's resources and exacerbated her sense of helplessness and dependency on Defendant.

308.     Furthermore, Defendant's control over Plaintiff's finances extended beyond mere economic exploitation, as he used his financial leverage to further manipulate and control her behavior.

309.     Plaintiff contends that Defendant's deliberate actions to undermine her financial stability were part of a broader pattern of coercive control designed to maintain his dominance and authority over her.

310.     As if the physical, emotional, and financial abuse were not enough, Defendant also interfered with Plaintiff's custody rights over her child, exacerbating her emotional anguish and distress. Plaintiff alleges that Defendant manipulated legal proceedings and forcibly took custody of their child, despite Plaintiff's rightful claim to parental rights.

**311.     Agencies, Kate Walker, judges, guardian at litems, et al.**

312.     Defendants' interference with Plaintiff's custody rights was not only a violation of her legal rights but also a profound betrayal of trust and a source of deep emotional pain. Plaintiff contends that Defendants' actions continue to deprive her of a relationship with her adult son who won't communicate with her or allow her to visit.

313.     The agencies and individuals who perpetuate this do this with malicious intent and disregard for the plaintiff's well-being.

314.     Plaintiff asserts that the legal abuse was not isolated incidents but rather part of a pattern of intentional and malicious conduct aimed at controlling, manipulating, and harming her emotionally.

57

315.    Defendants' actions collectively relied on deceit and manipulation. They followed a consistent pattern of outrageous behavior that would shock the conscious of any reasonable or sensible human being.

316.    This outrageous pattern of conduct persisted over several years, leaving a lasting and profound impact on Plaintiff's well-being and mental health.

317.    Plaintiff contends that Defendant's deliberate and calculated actions to undermine her autonomy and inflict harm upon her demonstrate a clear and willful disregard for her rights and dignity.

318.    Due to Defendants' intentional conduct, Plaintiff has suffered severe and lasting emotional distress, the effects of which continue to haunt her and interfere with her ability to enjoy life and pursue happiness.

319.    Plaintiff contends that Defendants' legal abuse by the most powerful individuals in the state, coupled with the shame and humiliation, caused her to experience intense feelings of anxiety, depression, and trauma, which significantly impacted her quality of life and mental health.

320.    The cumulative effect of being denied a relationship with her son has left Plaintiff emotionally scarred and psychologically traumatized.

321.    Plaintiff seeks redress for the severe and lasting harm inflicted on her by Defendant's deliberate actions, including compensatory and punitive damages, and any other relief deemed just and proper by this Honorable Court.

**322.    Heidi Frechin-Wilson and Judge**

323.     Frechin-Wilson (September 2023) is still going to court years later committing perjury, abusing the legal process, and attempting to interfere with the relationship with me and my adult son in order to fraudulently conceal her malice that she has fought to keep hidden all these years.  This outrageous conduct and inability to obtain justice has caused Ms. Topa psychological and emotional stress and the loss of relationships.

### xi. **Eleventh Cause of Action: Racketeer Influenced Corrupt Organizations**

324.     18 USC 1962 states, "It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of **racketeering activity** or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce"

325.     Plaintiff seeks redress for the severe and lasting harm inflicted on her by Defendant's deliberate racketeering behavior exacted under color of law and religion.

326.     CRS Section 31-10-1506 Perjury

327.     Any person, having taken any oath or made any affirmation required by this article, who swears or affirms willfully, corruptly, and falsely in a matter material to the issue or point in question or suborns any other person to swear or affirm willfully, corruptly, and falsely commits perjury in the second degree or subornation of perjury.

328.     Defendants used perjury as a means of high jacking the legal system and deriving income from the labor of Topa as well income from the feigned administration and prosecution of the juvenile case. All the police and social workers also derived income.

329.     <u>18-8-704 CRS is the Colorado law that prohibits making threats against witnesses or victims in order to deter their cooperation with authorities, or to influence their testimony in court.</u>

330.     Intimidating a witness is a class 4 felony in Colorado and includes

331.     <u>(1) A person commits intimidating a witness or victim if:</u>

332.     (a) By use of a threat, act of harassment as defined in section 18-9-111, or act of harm or injury to any person or property directed to or committed upon:
(I) A witness in any criminal or civil proceeding;
(II) A victim of any crime;
(III) A person he or she believes has been or is to be called or who would have been called to testify as a witness in any criminal or civil proceeding or a victim of any crime;
(IV) A person he or she believes may have information relevant to a criminal investigation;
(V) A member of the witness's family;
(VI) A member of the victim's family;
(VII) A person in close relationship to the witness or victim;
(VIII) A person residing in the same household with the witness or victim;
(IX) A person he or she believes may be able to exert influence upon the witness or victim; or
(X) Any person who has reported a crime or who may be called to testify or who testifies as a witness to or victim of any crime; and

333.     (b) He or she intentionally attempts to or does:
(I) Influence the witness or victim to testify falsely or unlawfully withhold any testimony; or
(II) Induce the witness or victim to avoid legal process summoning him or her to testify; or
(III) Induce the witness or victim to absent himself or herself from an official proceeding; or
(IV) Inflict such harm or injury prior to such testimony or expected testimony; or
(V) Influence the witness, victim, or any person with knowledge of relevant information to withhold information from, or provide false information to, law enforcement, a defense attorney, or a defense investigator.

334.     (2) Intimidating a witness or victim is a class 4 felony.

335.     <u>They defendants illegally used and allowed the intimidation of Topa which prevented her from presenting her case as an essential method of the racket.</u>

336.     <u>The defendants used kidnapping, fraud and bribery to further intimidate the plaintiff and obstruct justice in the plaintiff's case and therefore are the direct and proximate cause of this continuous wrong where the plaintiff cannot obtain justice.</u>

## F. <u>DAMAGES</u>

60

337.      The plaintiff has suffered deprivations of rights, loss of reputation, enjoyment of life, and loss of finances due to slander, abuse, fraud, and alienation.

### G. <u>PRAYER FOR RELIEF</u>

REASONS WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests this Honorable Court to GRANT her the following reliefs:

a.  GRANT a jury trial

b.  GRANT a tolling of the statute of limitations on claims because of the continuous wrong and fraudulent concealment doctrines that apply to this case

c.  GRANT judgment in favor of Plaintiff and against Defendant on all causes of action;

d.  AWARD Plaintiff general, compensatory and special damages for an amount proven at trial.

e.  AWARD Plaintiff punitive damages to against all non-entity defendants in their personal capacities to deter Defendant's conduct in future;

f.  AWARD Plaintiff compensatory and statutory damages against all damages for any harm, inconvenience, or stress suffered by the Plaintiff due to Defendant's actions and omissions.

g.  AWARD Plaintiff any further relief that this Honorable Court deems just and proper in the circumstances;

h.  AWARD Plaintiff pre- and post-judgment interests on (b), (c) and (d) above.

Dated this 7 day of May 2024.

Respectfully Submitted,

61

PLAINTIFF'S ORIGINAL COMPLAINT - 61

1

2
Halina Topa,<br>Plaintiff in *pro per*

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S ORIGINAL COMPLAINT - 62